Victor H. GUNDERSON and Roaring Stony Resort, a Minnesota partnership,

v.

Kenneth SCHLUETER, Jerry Engelbrecht, Gary Guida, and various John Does and Jane Does, whose identities are as yet unknown, Appellees.

No. 89–5112.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 15, 1989.

Decided May 23, 1990.

Richard T. Ostlund, Minneapolis, Minn., for appellants.

Tibor M. Gallo, St. Paul, Minn., for appellees.

Before LAY, Chief Judge, ARNOLD, Circuit Judge, and LARSON,* District Judge.

LAY, Chief Judge.

Victor Gunderson appeals the district

* The HONORABLE EARL R. LARSON, Senior United States District Judge for the District of Minnesota, sitting by designation.

court's [1] summary judgment dismissing his claim under 42 U.S.C. § 1983 (1982).[2] We affirm.

FACTS

Gunderson operates a resort in northeastern Minnesota. Kenneth Schlueter is a conservation officer employed by the Minnesota Department of Natural Resources (DNR) who works in an area that includes the resort. For several years the two have not got along well. Beginning in 1984 Schlueter singled out customers of Gunderson's resort for more frequent spot checks and strict enforcement of fish and game laws.

In the spring of 1986 Gunderson complained to Schlueter's supervisor about Schlueter's conduct. In response, Schlueter told Gunderson something to the effect that, "people who file complaints on me live to regret it." Later that summer Schlueter began an undercover investigation of Gunderson that led to criminal charges.

Schlueter arranged for two other DNR officers, Jerry Engelbrecht and Gary Guida, using false names, to schedule a guided fishing trip with Gunderson. Before they left for their trip, Schlueter issued Engelbrecht a citation for fishing without a license. Upon arriving at Gunderson's resort, Engelbrecht asked Gunderson to issue him a backdated license that he could then present to avoid the fine. Gunderson initially refused the request, but after repeated entreaties and a threat to cancel the trip, Gunderson acceded and issued the illegal license.

During their fishing trip, the two undercover DNR officers inquired about going on a guided bear hunt that fall. Resort employees informed them that they were too late to obtain bear hunting licenses for the 1986 season. After the fishing vacation ended, the two officers persisted in trying to arrange a 1986 bear hunt. They initiated a series of phone calls to Gunderson, who eventually agreed to let them stay at his resort for bear hunting.

Although Gunderson did not accompany the DNR officers on their hunt, his son pointed out to them a place in the woods where the resort dumped fish entrails, which attract bears. On two occasions the officers went into the woods and met up with Schlueter, who each time brought a caged bear. The officers inserted high-powered hunting rifles into the cages and shot the two bears. They then dumped the bears out of the cages onto the side of the woodland trail and returned to the resort to tell Gunderson of their successful hunt. They asked Gunderson and his brother to provide their license tags for the officers to attach to the bears before transport to the taxidermist. The Gundersons agreed to provide their tags and to transport the bears out of the woods to town.

Following the officers' stay at the resort, Schlueter swore out a criminal complaint before the Honorable Kenneth A. Sandvik, County Court Judge for Lake County. Judge Sandvik found probable cause to issue a complaint charging Gunderson with various fish and game violations. Schlueter served the complaint on Gunderson by leaving it at his residence with his 16–year-old son. Gunderson was not taken into custody.

In a later omnibus hearing, Gunderson moved for dismissal of the complaint for lack of probable cause, but the court found probable cause to support four of the counts and dismissed the rest. Gunderson was tried on these charges before a jury which acquitted him on every count. The jury instructions included an explanation of the defense of entrapment, among other defenses.

After his acquittal Gunderson filed this suit. He alleged that Schlueter's pattern of harassment violated 42 U.S.C. § 1983. He presented two theories: malicious pros-

1. The Honorable Robert G. Renner, United States District Court for the District of Minnesota.

2. The district court also dismissed Gunderson's pendent state law claim for malicious prosecu-tion. Gunderson does not challenge that dismissal on appeal.

ecution and a violation of substantive due process.

The district court concluded that, as a matter of law, the finding of probable cause precluded a section 1983 violation for malicious prosecution. The court also found that the officers' conduct did not rise to the level of a due process violation, and that qualified immunity protected the DNR officers from this suit. The court therefore granted the defendants' motion for summary judgment.[3]

DISCUSSION

A. Malicious Prosecution

■ Section 1983 provides a remedy only for violations of rights secured by federal statutes or the Constitution. *Maine v. Thiboutot*, 448 U.S. 1, 4, 100 S.Ct. 2502, 2504, 65 L.Ed.2d 555 (1980). The Constitution does not mention malicious prosecution, nor has Gunderson cited a case or statute establishing a federal action for malicious prosecution. In fact, this and other circuits are uniform in holding that malicious prosecution by itself is not punishable under section 1983 because it does not allege a constitutional injury. *See Coogan v. City of Wixom*, 820 F.2d 170, 175 (6th Cir.1987); *Whatley v. Philo*, 817 F.2d 19, 22 (5th Cir.1987); *Johnson v. Barker*, 799 F.2d 1396, 1400 (9th Cir.1986); *Occhino v. United States*, 686 F.2d 1302, 1311 (8th Cir. 1982); *Cramer v. Crutchfield*, 648 F.2d 943, 945 (4th Cir.1981). Therefore, mali-

cious prosecution can form the basis for a section 1983 action only if the defendants' conduct also infringes some provision of the Constitution or federal law. Read liberally, Gunderson's malicious prosecution claim may be taken to argue a procedural due process violation. In essence, he asserts that illegal harassment by Schlueter deprived him of liberty and property.

■ Procedural due process prohibits state authorities from depriving a person of life, liberty, or property without conforming to constitutionally required procedures. In this case we find that appropriate procedures were followed.[4]

As the Supreme Court pointed out in *Baker v. McCollan*, 443 U.S. 137, 145, 99 S.Ct. 2689, 2699, 61 L.Ed.2d 433 (1979), the Constitution does not guarantee that criminal charges will be filed only against the guilty. Rather, the Constitution mandates procedures designed to protect defendants. In this case the complaint against Gunderson was sworn before a judge who in good faith found probable cause, a finding later confirmed in a pre-trial hearing. Gunderson was not detained in custody, and his trial followed within an acceptable length of time. These facts simply do not show Gunderson was accorded less process than he was due under the Constitution. *Cf. Coogan v. City of Wixom*, 820 F.2d at 174 (no section 1983 action for "harassment"

---

**3.** Gunderson alleges that during the interim between the district court's judgment and the argument of this appeal, that is, during the summer of 1989, Schlueter again initiated an undercover operation against his resort. He claims that DNR agents again posed as resort customers, and during a fishing trip they attempted to convince Gunderson's employees to violate fishing regulations. Gunderson states that the officers filed a criminal complaint against the resort after an employee sold them one dozen minnows without a license. We agree these facts are important evidence of an overall pattern of harassment, but they are not properly before us.

**4.** We assume but do not decide that Gunderson suffered a constitutional deprivation of liberty by his compelled appearance at his trial. We note that the only authority on this precise question is inconclusive. *See Nesmith v. Taylor*, 715 F.2d 194, 196 (5th Cir.1983) (no deprivation

of liberty when section 1983 plaintiff had been compelled to appear to defend against baseless charge, because he would have been required to appear at same hearing to defend against well-grounded charge); *see also Easter House v. Felder*, 879 F.2d 1458, 1477 (7th Cir.1989) (en banc) (repeated investigations and audits of private adoption agency by state social service agency not a deprivation of liberty when adoption agency only had to answer questions and make files available), *vacated and remanded on other grounds*, —— U.S. ——, 110 S.Ct. 1314, 108 L.Ed.2d 490 (1990).

Gunderson has failed to allege facts proving a constitutional deprivation of property. Although he complains Schlueter's harassment injured his reputation, injury to reputation alone, without additional proof of a loss of business or employment opportunities, does not rise to a constitutional deprivation. *Paul v. Davis*, 424 U.S. 693, 701, 96 S.Ct. 1155, 1160, 47 L.Ed.2d 405 (1976).

**410**

by county prosecutor when prosecutor had probable cause for bringing charges); *Whatley v. Philo,* 817 F.2d at 22 (no section 1983 action for vexatious use of legal process where state insurance board followed appropriate procedures); *Smiddy v. Varney,* 665 F.2d 261, 266 (9th Cir.1981) (section 1983 action available to remedy bad faith arrest without probable cause), *cert. denied,* 459 U.S. 829, 103 S.Ct. 65, 74 L.Ed.2d 66 (1982).

Although Schlueter appears to have acted on a personal vendetta against Gunderson, the absence of a procedural defect precludes finding a procedural due process violation here.[5]

### B. Substantive Due Process

The Supreme Court has acknowledged that outrageous conduct by law enforcement authorities that "shocks the conscience" might violate due process even without a procedural violation. *Rochin v. California,* 342 U.S. 165, 172, 72 S.Ct. 205, 209, 96 L.Ed. 183 (1952). Although *Rochin* involved physical abuse by the police,[6] the court has suggested the doctrine can apply when law enforcement authorities go too far in manufacturing a crime and inducing a defendant into it. *United States v. Russell,* 411 U.S. 423, 431–32, 93 S.Ct. 1637, 1642–43, 36 L.Ed.2d 366 (1973) ("[W]e may some day be presented with a situation in which the conduct of law enforcement agents is so outrageous that due process principles [are violated]"); *Hampton v. United States,* 425 U.S. 484, 492–95, 96 S.Ct. 1646, 1651–53, 48 L.Ed.2d 113 (1976) (Powell, J., concurring).[7]

The level of "outrageousness" needed to prove such a due process violation, however, is quite high. The Supreme Court has repeatedly emphasized that the focus of the inquiry in an entrapment situation must be on the defendant's own predisposition to commit the crime, and not on the tactics employed by the police to entice him into the crime. *Hampton,* 425 U.S. at 485–95, 96 S.Ct. at 1648–53 (plurality and concurring opinions); *Russell,* 411 U.S. at 430–36, 93 S.Ct. at 1642–45. The police conduct becomes the proper point of inquiry only in the rare situation where it is too outrageous to be overlooked.

This court has never held law enforcement undercover conduct to have reached that level of outrageousness.[8] We have

---

**5.** We contrast this case with our decisions in *McGee v. Hester,* 724 F.2d 89 (8th Cir.1983), and *Lovejoy v. Goodrich,* 798 F.2d 1201 (8th Cir. 1986). In *McGee* we found a section 1983 cause of action when the police employed highly intrusive surveillance methods to observe whether patrons at plaintiff's border-town liquor store unlawfully imported liquor into the neighboring state. We held that if the plaintiff could prove the police intentionally harassed his customers in order to impair his business, then he could establish a section 1983 violation. 724 F.2d at 92. The harassment in that case, however, was not connected with any arrest based on probable cause or search and seizure valid under the fourth amendment.

In *Lovejoy,* the police twice arrested Lovejoy and later dismissed the charges against him. We held that Lovejoy had raised a jury question on whether the police utilized the arrest procedure for investigative purposes and to harass him, or whether the officers acted in good faith. 798 F.2d at 1203. The facts of the case do not make clear whether the police had probable cause for the arrests. However, the fact that the police on one occasion changed the charge against Lovejoy after determining the original charge was baseless suggests the possible absence of probable cause.

**6.** The Supreme Court has since made clear that excessive force in arrest cases should be analyzed pursuant to the fourth amendment and not the due process clause. *Graham v. Connor,* —— U.S. ——, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989).

**7.** Justice Rehnquist's plurality opinion stated that the only remedy for government overinvolvement in the creation of a crime is the affirmative defense of entrapment. The concurring opinion of Justice Powell, joined by Justice Blackmun, refused to rule out the possibility of a due process violation.

**8.** *See United States v. Padilla,* 869 F.2d 372, 378 (8th Cir.) (not outrageous enough for violation), *cert. denied,* —— U.S. ——, 109 S.Ct. 3223, 106 L.Ed.2d 572 (1989); *United States v. Dougherty,* 810 F.2d 763, 769–70 (8th Cir.1987) (same); *United States v. Mazzella,* 768 F.2d 235, 238–39 (8th Cir.) (same), *cert. denied,* 474 U.S. 1006, 106 S.Ct. 528, 88 L.Ed.2d 460 (1985); *United States v. LeRoux,* 738 F.2d 943, 948 (8th Cir.1984) (same); *United States v. McCaghren,* 666 F.2d 1227, 1230 (8th Cir.1981) (same); *United States v. Quinn,* 543 F.2d 640, 648 (8th Cir.1976) (same); *but see United States v. Lard,* 734 F.2d 1290, 1296–97 (8th Cir.1984) (police conduct

come closest to finding a violation when the government conceived and initiated the crime, and the defendant merely fell into place with the government's scheme. *See United States v. Lard,* 734 F.2d at 1297 ("[The police conduct] was aimed at creating new crimes for the sake of bringing criminal charges against Lard, who, before being induced, was lawfully and peacefully minding his own affairs"). Still, we found no due process violation, although we held entrapment was established as a matter of law. *Id.* On the other hand, we have stressed that "[g]overnment agents may go a long way in concert with the individual in question without violating due process." *United States v. LeRoux,* 738 F.2d at 948.[9]

In this case we conclude that while the DNR officers' conduct was objectionable and perhaps born of a personal animosity toward Gunderson, it did not rise to the high level needed to prove a due process violation. The officers did not apply any extraordinary pressure on Gunderson to convince him to join their scheme. They simply asked him to commit the violations, though repeatedly, and he acceded. Although the judgment of acquittal and the entrapment instruction suggest that the jury concluded Gunderson was not predisposed to commit these crimes, that acquittal is the full extent of his remedy in this case. Finding a due process violation here would bring us too close to converting every successful entrapment defense into a section 1983 action for damages.

Finding no constitutional deprivation, it is unnecessary to pass on the question of qualified immunity.

Affirmed.

"approached" level of outrage giving rise to substantive due process violation).

9. The Third Circuit found a substantive due process violation in *United States v. Twigg,* 588 F.2d 373 (3d Cir.1978). There the Drug Enforcement Agency (DEA) provided the defendant with the idea to manufacture drugs, money to buy the necessary chemicals, technical expertise, and a place to operate the laboratory. In *United States v. Simpson,* 813 F.2d 1462 (9th Cir.1987), the Ninth Circuit found no substantive due process violation when DEA agents knew their informant was sexually involved with the target during several months of the investigation.