**UNITED STATES of America, Appellee,**

v.

**Everett SILEVEN, Appellant.**

**No. 92–2389.**

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 13, 1992.

Decided Feb. 10, 1993.

Rehearing and Rehearing En Banc Denied April 22, 1993.

Everett Sileven, Houston, MO, for appellant.

Jan W. Sharp, Asst. U.S. Atty., Omaha, NE, for appellee.

Before JOHN R. GIBSON, BEAM, and MORRIS SHEPPARD ARNOLD, Circuit Judges.

PER CURIAM.

Everett Sileven appeals from his convictions and sentences in the United States District Court for the District of Nebraska[1] for one count of conspiracy to defraud the United States in violation of 18 U.S.C. § 371 and three counts of mail fraud in violation of 18 U.S.C. § 1341. He argues numerous grounds of error which are unpersuasive. We affirm.

Sileven was the president of American Financial Services (AFS). Sileven was also the pastor of Faith Baptist Church in Louisville, Nebraska. Acting on a tip from the Nebraska State Patrol, the Internal Revenue Service (IRS) began an investigation of Sileven and AFS. After initially employing a private citizen, Greg Retzlaff, to conduct preliminary investigations, the IRS assigned one of its professional undercover agents, Marvin Koel, to the case. Koel, posing as a client named Edward Felland, met with Sileven on numerous occasions in the United States and Canada. The meetings in the United States were audio-taped by Koel. Koel, Sileven, and Michael Merling, the Canadian accountant for AFS, ultimately agreed to enter into a scheme by which Koel would transfer untaxed cash income to Sileven; Sileven would transmit the funds to Merling in Canada; and Sileven and Merling would return the funds (minus a fee) in the form of untaxable loan proceeds to Koel. By this ruse Koel would avoid paying any income tax on the cash income, and Sileven and Merling would receive a percentage of the funds they handled.

In a series of meetings, Koel transferred a total of $115,000 to Sileven. In return,

1. The Honorable William G. Cambridge, United States District Judge for the District of Nebraska.

Sileven supplied Koel with "loan proceeds" equal to the amount of the untaxed cash (minus fees), false loan papers, and false papers documenting a nonexistent donation to Faith Baptist Ministries. Koel audiotaped these meetings. After it became clear to the IRS that it could not lure Merling into the United States for arrest, and because Canada does not permit extradition of tax offenders, the IRS decided to terminate its investigation.

On October 19, 1989, Sileven was charged with one count of conspiracy to defraud the United States and three counts of mail fraud. The mail fraud counts involved mailings which had been made during the course of the scheme. Sileven represented himself, although stand-by counsel was appointed to assist him. After a five-day trial, the jury convicted Sileven of all four counts. The district court sentenced Sileven to fifteen months in prison on each count, to be served concurrently, and to three years of supervised release on each count, to be served concurrently.

## I. SUFFICIENCY OF THE INDICTMENT

■ Sileven argues that the indictment was fatally defective and should have been dismissed prior to trial because the government proceeded under the general "defraud" clause of 18 U.S.C. § 371 rather than the more specific "offense" clause of that statute. Section 371 prohibits two kinds of conspiracies: conspiracies to commit a specific offense against the United States and conspiracies to defraud the United States.[2] Sileven relies on *United States v. Minarik*, 875 F.2d 1186 (6th Cir. 1989), for the proposition that the "defraud" clause was an interim measure for use only when specific fraud statutes did not exist and, now that such statutes do exist, only the "offense" clause should be used in an indictment charging a violation of section 371. Sileven further argues that he lacked sufficient information to mount a

defense because the government did not identify which fraud statutes the conspiracy intended to violate.

■ We have carefully reviewed the record and conclude that Sileven failed to raise this issue below. "A defendant must raise before trial by motion any objections based on defects in the indictment." *United States v. Richards*, 723 F.2d 646, 648 (8th Cir.1983) (per curiam). Accordingly, Sileven has waived this issue. Even if Sileven had properly preserved this issue for appeal, however, he could not prevail. In *United States v. Derezinski*, 945 F.2d 1006, 1010 (8th Cir.1991), we distinguished *Minarik* on its facts. We noted that the Sixth Circuit had "closely limited its finding to the specific facts of the case" and had "placed great emphasis on the fact that the Government drastically changed its theory of prosecution as the case progressed." *Id.*

## II. DISCOVERY OF GRAND JURY INFORMATION

■ Sileven argues that the district court's refusal to grant his request for grand jury information denied him due process. Grand jury material may be disclosed "when permitted by a court at the request of the defendant, upon a showing that grounds may exist for a motion to dismiss the indictment because of matters occurring before the grand jury." Fed. R.Crim.P. 6(e)(3)(C)(ii). However, a defendant seeking disclosure must demonstrate a "particularized need," and whether to permit such disclosure is within the sound discretion of the trial judge. *United States v. Benson*, 760 F.2d 862, 864 (8th Cir.) (per curiam), *cert. denied*, 474 U.S. 858, 106 S.Ct. 166, 88 L.Ed.2d 137 (1985). Sileven did not meet his burden of demonstrating a particularized need for this information. *See Thomas v. United States*, 597

---

**2.** The statute reads in pertinent part:
   If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose,

and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined not more than $10,000 or imprisoned not more than five years, or both.
18 U.S.C. § 371.

F.2d 656, 657–58 (8th Cir.1979) (per curiam).

## III. BILL OF PARTICULARS AND DISCOVERY

■ Sileven argues that the district court's denial of his motion for a bill of particulars made it impossible for him to prepare a defense. The district court has broad discretion in granting or denying a bill of particulars. *United States v. Stephenson*, 924 F.2d 753, 762 (8th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 63, 116 L.Ed.2d 39 (1991). The indictment sufficiently informed Sileven of the nature of the charges against him, and the district court properly denied the bill.

■ Sileven argues that the district court erred in denying his request for discovery of additional information, e.g., case files and investigative reports, regarding the government's investigation of him. "Fed.R.Crim.P. 16(a)(2) authorizes the government to refuse discovery of reports, memoranda or other government documents made by the attorney for the government or other government agents in connection with the investigation or prosecution of the case prior to trial." *United States v. Krauth*, 769 F.2d 473, 476 (8th Cir.1985). Accordingly, we cannot say that the district court erred in denying Sileven's motion for this discovery. Sileven argues that the State of Nebraska refused to release certain information to him necessary to prepare his defense. Sileven argues that the State of Nebraska failed to provide him the information he desires, but we conclude that this issue is outside the scope of this proceeding.

## IV. ADMISSIBILITY OF AUDIOTAPES

■ Sileven argues that the district court's failure to suppress the audiotapes recorded by the government's agents during their meetings with him violated his rights under the Fourth Amendment.[3] Sileven contends that these tapes were ille-gally recorded without a warrant or order. He attempts to distinguish the line of cases upholding the admissibility of tapes made by government agents who are parties to conversations by arguing that Koel engaged in deception by assuming a fictitious identity.

It is well settled that a law enforcement agent may record conversations between himself and another party without violating the Fourth Amendment. *See United States v. White,* 401 U.S. 745, 752, 91 S.Ct. 1122, 1126, 28 L.Ed.2d 453 (1971); *Lopez v. United States,* 373 U.S. 427, 439, 83 S.Ct. 1381, 1388, 10 L.Ed.2d 462 (1963). We reject Sileven's argument that, because Koel was acting in an undercover capacity, this rule of law does not apply. The Fourth Amendment does not protect "a wrongdoer's misplaced belief that a person to whom he voluntarily confides his wrongdoing will not reveal it." *Hoffa v. United States,* 385 U.S. 293, 302, 87 S.Ct. 408, 413, 17 L.Ed.2d 374 (1966).

## V. ADMISSIBILITY OF MERLING'S STATEMENTS

■ Sileven argues that the district court's admission into evidence of hearsay statements made by Merling violated the Confrontation Clause of the Sixth Amendment. Fed.R.Evid. 801(d)(2)(E) provides an exception to the hearsay rule where the statement sought to be admitted against a party was made by a coconspirator during the course of and in furtherance of the conspiracy. To meet the requirements of this exception, "the government must demonstrate that (1) a conspiracy existed; (2) that the defendant and declarant were part of the conspiracy; and (3) that the declaration was made during the course and in furtherance of the conspiracy." *United States v. Eisenberg,* 807 F.2d 1446, 1453 (8th Cir.1986). These three elements must be established by a preponderance of the evidence. *Bourjaily v. United States,* 483 U.S. 171, 176, 107 S.Ct. 2775, 2779, 97 L.Ed.2d 144 (1987). The district court's

---

**3.** Sileven also argues that the evidentiary use of the tapes violated the First and Fifth Amendments and the constitutions of Nebraska and Missouri. Because Sileven does not elaborate on these claims, however, we will not consider them.

finding that these requirements have been met is reviewed under the clearly erroneous standard. *Id.* at 181, 107 S.Ct. at 2781.

The district court did not clearly err in finding by a preponderance of the evidence that these three requirements were established. Koel testified at trial that, in a meeting attended by Sileven, Merling, and Koel on May 7, 1988, Merling stated to Sileven that "Ed [Koel's undercover name] wants to hide some income." Sileven replied, "Well, that's what we have you for." Accordingly, it is evident that a conspiracy existed and that both Sileven and Merling were members. Further, the statements of Merling that were admitted into evidence all involved advice on concealing income from taxing authorities, and were made in the course of and furthered the conspiracy.

## VI. COMPLIANCE WITH 26 U.S.C. § 6103(h)(5)

■ Sileven argues that the district court erred in proceeding to trial before his receipt of statutorily mandated information under 26 U.S.C. § 6103(h)(5) as to whether prospective jurors had been audited or investigated by the IRS prior to 1964. Because records on this subject are only maintained back to 1964, the IRS did not provide this information for pre–1964 years.

We recently agreed with the Second, Fifth, and Sixth Circuits that "the denial of a taxpayer defendant's request for a continuance to obtain additional section 6103(h)(5) information is not reversible when the district court conducts an appropriate voir dire." *United States v. Axmear*, 964 F.2d 792, 793 (8th Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 963, 122 L.Ed.2d 120 (1993). The district court asked the jurors at voir dire whether they had *ever* been the subject of an IRS audit or investigation. Accordingly, we conclude Sileven suffered no prejudice from the district court's denial of his request for a continuance. *See id.*

## VII. OUTRAGEOUS GOVERNMENT CONDUCT

■ Sileven argues that the district court erred in not dismissing the indictment because his due process rights were violated by outrageous government conduct. Sileven argues that the government used acts of trickery, persuasion, and fraud to involve him in an illegal scheme. In *Gunderson v. Schlueter*, 904 F.2d 407 (8th Cir. 1990), we considered this issue at length:

> The Supreme Court has acknowledged that outrageous conduct by law enforcement authorities that "shocks the conscience" might violate due process even without a procedural violation.... [T]he court has suggested the doctrine can apply when law enforcement authorities go too far in manufacturing a crime and inducing a defendant into it....
>
> The level of "outrageousness" needed to prove such a due process violation, however, is quite high....
>
> This court has never held law enforcement undercover conduct to have reached this level of outrageousness.... [W]e have stressed that "[g]overnment agents may go a long way in concert with the individual in question without violating due process."

904 F.2d at 410–11 (citations and footnotes omitted). We conclude that the government's conduct in this case was not outrageous, and that Sileven has not shown any action on the government's part which "shocks the conscience."

## VIII. SUFFICIENCY OF THE EVIDENCE

■ Sileven argues that the evidence presented at trial was insufficient to support a guilty verdict on any of the counts. A jury verdict must be sustained if there is substantial evidence, taking the view most favorable to the Government, to support it. *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942); *United States v. Lee*, 743 F.2d 1240, 1250 (8th Cir.1984). "To convict [Sileven] of conspiring to defraud the United States under 18 U.S.C. § 371, the government must show an agreement to defraud the federal government and an act by one or more of the conspirators to effect the object of the conspiracy." *United States v. Murphy*, 957 F.2d 550, 552 (8th Cir.1992).

The government presented the following evidence through witnesses, audiotapes, and documents. During Koel's first meeting with Sileven on April 6, 1988, Sileven stated that keeping the AFS records in Canada meant that they were beyond the reach of search warrants and inaccessible to the IRS. After Koel indicated that he had had a good year in his business, Sileven suggested that Koel was going to be subject to very high taxes and advised him to create debt by transferring cash into a trust and loaning the money back to himself.

At another meeting on April 27, 1988, at which Koel asked Sileven if an upcoming seminar in Montreal could be taped, Sileven replied that "I've seen some sort of bad things come out of tapes." Sileven stated that the taping would pose a "security problem," and that the denial of Koel's request was "for our protection." Sileven continued that "they can't really prosecute you for something you say off shore.... If you say it on shore or you bring the tapes back in then it's construed as you saying it here." Sileven added that "I've got a friend in jail in Florida right now they picked up and they—they've brought everything he's ever said on tape in, you know, and used that on him."

At the Montreal seminar in May of 1988, Merling told attendees that he was the accountant for AFS and that AFS provided "secrecy from taxing authorities." In a private meeting with Koel, Merling told him that he could reduce his tax obligation by omitting several cash sales of equipment from his records. Merling noted that Koel should also omit the costs associated with the purchase of the equipment for consistency. Merling stated that there were many ways to move cash out of the United States, and that he had recently received cash from Sileven.

As noted previously, at a joint meeting attended by Koel, Sileven, and Merling on May 7, 1988, Merling told Sileven that "Ed wants to hide some income." Sileven replied, "Well, that's what we have you for." Merling and Sileven also explained to Koel that Koel's money could be placed in a trust and loaned back to him. Sileven stated that AFS would assemble the necessary paperwork and quote a fee for the service.

Sileven was initially reluctant to handle Koel's cash personally. He stated that he was familiar with individuals who had taken part in "a very similar operation as what we're doing and they happened to be IRS agents to set them up." Sileven then agreed to handle the money. Sileven stated that a note would be created with a "circulating" annual payment to provide a tax deduction. Sileven reasoned that, if Koel was ever "pulled in by the IRS," he would be able to state that the funds were not his, but loans from the trust. Sileven noted that "you don't want to get in a position of where you're borrowing your own money back.... You really are but ... of course, we're not going to communicate with the IRS." Although Sileven claimed that what he was doing was legitimate, he added that "some bankers go to jail for it and some don't."

In a telephone call on August 17, 1988, Sileven told Koel that he did not want to handle cash because he had received a tip that the government was watching him. He also stated that a friend who had helped someone move $100,000 had been arrested. Sileven suggested that he would be willing to reconsider helping Koel in the next four to five months, but that he was worried about getting involved with other individuals recommended by Koel who would "pull a bunch of us in with them and I don't want to do that."

In a meeting on October 13, 1988, Sileven told Koel that he wanted to protect himself and that they were dealing with "high risk stuff." Koel made a point of telling Sileven that the cash he was transferring was "untaxed funds." Sileven replied, "You're not wired, are you?" Sileven then acknowledged the possibility of going to jail, and stated that he had "helped" several people. Sileven explained that Merling would be the person actually issuing the "loan" checks. Sileven noted that Koel was not the first person to come to him for help, and that he had handled transactions involving as much as $25,000. At this

meeting, Sileven supplied Koel with a number of documents which purported to create a loan obligation, including a loan application and a blank credit statement.

At a October 24, 1988 meeting, Koel transferred cash to Sileven. Sileven in turn gave Koel a check for the identical amount (minus a fee). Sileven had Koel sign two documents purporting to verify a donation to Faith Baptist Church. Sileven stated that this paperwork could be used to substantiate a charitable deduction to the church if Koel chose to claim one. No such donation had been made, however. Sileven and Koel conducted similar transactions on several occasions over the next six months. The total amount transferred by Koel to Sileven was $115,000.

In an effort to lure Merling into the United States, Koel asked Sileven on December 22, 1988, if Merling would attend a seminar in the United States. Sileven did not want to hold a meeting in the United States. Sileven stated:

> You never know, you know, it's just well, there are two or three reasons, if they ask you why Canada and not here. First of all, is they cannot, let's just say that in their code book, it's a crime to do what we're doing. In my code book, it isn't. Okay.... But in their code book, they'll say "Okay, this is a crime to plan to take cash and move it in these fashions." They cannot arrest me in this country for a so-called alleged crime I may commit in another country.... But if I stand here in the middle of a bunch of people, who automatically become subpoenable witnesses ... then I have a problem.

We conclude that this evidence, construed in the light most favorable to the government, and granting the government all reasonable inferences, was more than sufficient for the jury to find Sileven guilty of conspiring to defraud the United States.

■ "In order to prove mail fraud under 18 U.S.C. § 1341, the government must establish: (1) a scheme to defraud and (2) the use of the mails in furtherance of that scheme." *United States v. Brown*, 948 F.2d 1076, 1079 (8th Cir.1991). The above-recited evidence amply supports the exis-

tence of a scheme to defraud. The government presented the following evidence that the mails were used in furtherance of that scheme. Koel testified that he directed that a letter dated June 27, 1988, be mailed to Sileven regarding the trust. Copies of the letter, the envelope, and an enclosure were admitted into evidence. Another undercover IRS agent, Mark A. Kula, who had been recommended to Sileven by Koel, received an envelope from Sileven through the mail on January 30, 1989. This envelope contained a blank loan note and a blank financial statement. The envelope, along with copies of the completed note and statement, were admitted into evidence. Kula also signed a note payable to AFS dated April 11, 1989, which was mailed by another IRS agent to Sileven that same month. This note and the envelope in which it was sent were admitted into evidence. We conclude that this evidence, construed in the light most favorable to the government, and granting the government all reasonable inferences, was sufficient for the jury to find Sileven guilty of the three counts of mail fraud.

## IX. SENTENCING ISSUES

■ Sileven argues that the district court erred in relying on the presentence report rather than the trial record in calculating his sentence. Sileven also argues that the sentence is excessive because of an unjustified four-level increase to his base offense level: two points under U.S.S.G. § 3B1.1(c) because of his role in the offense and two points under U.S.S.G. § 2T1.9(b)(2) for encouraging others to violate the internal revenue laws.

■ It is clear from the sentencing transcript that the district court's findings were based on the trial record, not the presentence report. Further, we will reverse the district court's finding that Sileven was "an organizer, leader, manager, or supervisor" under section 3B1.1(c) only if that finding is clearly erroneous. *See United States v. Johnston*, 973 F.2d 611, 613–14 (8th Cir.1992). We conclude that this finding was not clearly erroneous. Si-

leven was the president of AFS. He formed the company. He admitted that Merling worked for him. He conducted seminars promoting AFS's activities. We also conclude that the district court did not clearly err in finding that Sileven encouraged others to break the law under section 2T1.9(b)(2). The evidence establishes that Sileven repeatedly encouraged Koel and Retzlaff to hide income through his actions and words. Further, he admitted similarly "helping" others.

## X. JURISDICTION AND VENUE

Sileven finally raises numerous challenges to the district court's jurisdiction over him, e.g., he is not a federal citizen. These arguments are plainly frivolous, and further discussion is unnecessary. Similarly, there is no merit to his argument that the district court abused its discretion in denying his motion for change of venue based on prejudicial media treatment.

We affirm the convictions and sentences.