Tim OSBORNE, Plaintiff,

v.

J.R. HOWARD and Roger
Ahlf, Defendants.

No. LR–C–90–877.

United States District Court,
E.D. Arkansas, W.D.

Feb. 23, 1994.

Edward G. Adcock, Little Rock, AR, for plaintiff.

Victra L. Fewell, Deputy Atty. Gen., State of Arkansas, for defendants.

## MEMORANDUM AND ORDER

SUSAN WEBBER WRIGHT, District Judge.

This is a 42 U.S.C. § 1983 action in which the plaintiff, Tim Osborne, alleges he was arrested and prosecuted without probable cause for a crime that never happened. The matter is before the Court on motion of the defendants, J.R. Howard and Roger Ahlf, for summary judgment [doc. #28]. The plaintiff responded to the motion at a hearing held on February 18, 1994.[1] For the reasons that follow, the Court finds that defendants' motion for summary judgment should be and hereby is granted in part and denied in part.

### I.

At the time of the events giving rise to this lawsuit, the plaintiff was a detective with the White County Sheriff's Department. Part of his job was the investigation of narcotics cases. The defendants are both officers with the Criminal Investigative Division of the Arkansas State Police.

According to the complaint, sometime prior to January 21, 1988, defendant Ahlf concluded that plaintiff was trading drugs for sex as a law enforcement officer. Defendants arranged for Betty Thomas, who herself had earlier been arrested on drug charges, to claim that a video camera, VCR, and "two very personal tapes," had been stolen from her car. This bogus theft report was passed on to the Criminal Investigation Division where it was received by plaintiff. Between January 21–29, 1988, defendants had Thomas repeatedly call plaintiff about pornographic tapes and drugs. These conversations were recorded.

Plaintiff became concerned that Thomas was trying to set him up and told his superi-

ors that he was working on a case involving Thomas. In this regard, plaintiff opened a criminal investigative file on Thomas, assigned her a CID suspect number, and talked to defendants about Thomas. Plaintiff also talked to prosecuting attorney Chris Raff and Ahlf about participating in an investigation of Thomas on January 29, 1988. Raff and Ahlf did not participate in the investigation, however.

Thinking that Thomas might be in possession of cocaine, plaintiff obtained some "flash" cocaine from the evidence locker and went to Thomas' motel room on January 29, 1988, to see if she would offer him some cocaine. Defendants, meanwhile, had set up a videotaping system in the room. Plaintiff stayed in the room for three hours with Thomas talking about pornography and drugs, but Thomas showed no drugs. During this time, plaintiff twice attempted to call Ahlf without success. Plaintiff ultimately pulled out his "flash" cocaine in an effort to induce Thomas to produce cocaine. At that time, Ahlf and another officer entered the room and arrested plaintiff for delivery of a controlled substance.

Plaintiff was charged pursuant to an information by prosecuting attorney Raff. Prior to trial, the defendants allegedly misrepresented the quality of their case to the prosecuting attorney, procured a false witness statement against plaintiff, and destroyed exculpatory tape recordings of conversations between plaintiff and Thomas.[2] Plaintiff was acquitted of the charge by a jury and filed the lawsuit now under consideration.

### II.

Summary judgment may be granted if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Evans v. Pugh, 902 F.2d 689, 691 (8th Cir.1990). The burden on the moving party is only to demonstrate that the record does not disclose a genuine issue

---

1. Because defendants' motion for summary judgment was untimely and filed only fourteen days before the scheduled trial date, the Court allowed counsel for the plaintiff to respond orally to the motion in lieu of a written response.

2. The Court has reviewed transcripts of the conversations and, while arguably not incriminating, would not necessarily characterize the conversations as exculpatory.

as to a material fact. Once that is done, the nonmoving party must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Rather, the nonmoving party must "come forward with 'specific facts showing that there is a *genuine issue* for trial.'" *Id.* at 587, 106 S.Ct. at 1356 (quoting Fed.R.Civ.P. 56(e) and adding emphasis). The inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Id.* (citations omitted). However, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Id.* (citation omitted). The Eighth Circuit Court of Appeals has observed that a series of Supreme Court decisions

> demonstrates that we should be somewhat more hospitable to summary judgments than in the past. The motion for summary judgment can be a tool of great utility in removing factually insubstantial cases from crowded dockets, freeing courts' trial time for those cases that really do raise genuine issues of material fact.

*City of Mount Pleasant v. Associated Electric Cooperative, Inc.,* 838 F.2d 268, 273 (8th Cir.1988).

### III.

Plaintiff claims (1) the defendants knew there was no reason to believe he was guilty or likely to commit the alleged offense and that their investigation, arrest, and charge of him was so outrageous as to shock the conscience, thus depriving him of his right to substantive due process under the Fourteenth Amendment; and (2) his arrest was without probable cause and deprived him of his rights under the Fourth Amendment.

#### A. Substantive Due Process

■ Plaintiff's claimed right to substantive due process in the manner in which he was arrested and prosecuted is foreclosed by the Supreme Court's recent plurality opinion in *Albright v. Oliver,* —— U.S. ——, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994). In that case, upon learning that Illinois authorities had issued an arrest warrant charging him with the sale of a substance which looked like an illegal drug, Kevin Albright surrendered to Roger Oliver, a police detective, and was released after posting bond. At a preliminary hearing, Oliver testified that Albright sold the look-alike substance to Veda Moore, an undercover informant, and the court found probable cause to bind Albright over for trial. At a later pretrial hearing, the court dismissed the criminal action against Albright on the ground that the charge did not state an offense under Illinois law. Albright then instituted a 42 U.S.C. § 1983 action against Oliver, alleging that Oliver deprived him of substantive due process under the Fourteenth Amendment—his "liberty interest"—to be free from criminal prosecution except upon probable cause. The complaint also charged a common-law malicious prosecution claim against Detective Oliver. The District Court dismissed the action on grounds that the complaint did not state a claim under 42 U.S.C. § 1983, and the Court of Appeals for the Seventh Circuit affirmed. 975 F.2d 343 (7th Cir.1992).

Albright appealed to the Supreme Court, claiming that the actions of the Illinois authorities infringed his substantive due process right to be free of prosecution without probable cause. Seven Justices rejected Albright's claim. Chief Justice Rehnquist, joined by Justice O'Connor, Justice Scalia, and Justice Ginsburg, concluded that Albright's claimed right to be free from criminal prosecution except upon probable cause must be judged under the Fourth Amendment rather than the Due Process Clause of the Fourteenth Amendment. —— U.S. at ——, 114 S.Ct. at 811. Noting that the Court has "always been reluctant to expand the concept of substantive due process," with its "scarce and open-ended" "guideposts for responsible decisionmaking," *Collins v. Harker Heights,* 503 U.S. ——, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992), the plurality observed that "the protections of substantive due process have for the most part been accorded to matters relating to marriage, family, procreation, and the right to bodily integrity," and that Albright's claim to be free from prosecution except on the basis of

probable cause is "markedly different from those recognized in this group of cases." *Id.* —— U.S. at ——, 114 S.Ct. at 812. The plurality went on to conclude that "[w]here a particular amendment 'provides an explicit textual source of constitutional protection' against a particular source of government behavior, 'that Amendment, not the more generalized notion of "substantive due process,' " must be the guide for analyzing these claims." *Id.* —— U.S. at ——, 114 S.Ct. at 813 (quoting *Graham v. Connor,* 490 U.S. 386, 395, 109 S.Ct. 1865, 1871, 104 L.Ed.2d 443 (1989)). In this case, the plurality stated, the Framers of the Constitution considered the matter of pretrial deprivations of liberty and drafted the Fourth Amendment to address it. *Id.*

Justice Kennedy, in an opinion joined by Justice Thomas, agreed with the plurality that an allegation of arrest without probable cause must be analyzed under the Fourth Amendment without reference to more general considerations of due process, but found that Albright's claim concerned not his arrest but instead the malicious initiation of a baseless prosecution against him. —— U.S. at ——, 114 S.Ct. at 817 (Kennedy and Thomas, JJ., concurring). Kennedy concluded, however, that the due process requirements for criminal proceedings do not include a standard for the initiation of a prosecution. *Id.* —— U.S. at —— – ——, 114 S.Ct. at 817–18. Even assuming, *arguendo,* that the common-law interest in freedom from malicious prosecution is protected by the due process clause, Kennedy said, there is neither need nor legitimacy in invoking 42 U.S.C. § 1983 in this case, given the fact that Illinois provides a tort remedy for malicious prosecution and the Court's holding in *Parratt v. Taylor,* 451 U.S. 527, 535–544, 101 S.Ct. 1908, 1912–17, 68 L.Ed.2d 420 (1981), that a state actor's random and unauthorized deprivation of such a due process interest cannot be challenged under § 1983 so long as the State provides an adequate post-deprivation remedy. *Id.* —— U.S. at —— – ——, 114 S.Ct. at 818–19.[3]

Justice Souter concluded that Albright's claim presented no substantial burden on liberty beyond what the Fourth Amendment is generally thought to redress already and, thus, agreed with the plurality that Albright has not justified recognition in a substantive due process violation in his prosecution without probable cause. —— U.S. at —— – ——, 114 S.Ct. at 819–20 (Souter, J., concurring). While not entirely foreclosing the possibility that a future case could state a due process claim for a prosecution without probable cause, Souter noted the rule of "reserving due process for otherwise homeless substantial claims" and concluded that the remedies available under the Fourth Amendment preclude reliance on the Due Process Clause when doing so would simply duplicate protection that a more specific constitutional provision already bestows. *Id.* —— U.S. at ——, 114 S.Ct. at 820. In framing his claim of infringement of a liberty interest in freedom from the initiation of a baseless prosecution, Souter said, Albright has chosen to disclaim any reliance on the Fourth Amendment seizure that followed when he surrendered himself into police custody, and that he has failed to allege any substantial injury that is attributable to the former event, but not the latter. *Id.* —— U.S. at ——, 114 S.Ct. at 821. In this regard, noted Souter, Albright's claimed damages of limitations on his liberty, freedom of association and of movement, financial expenses of his legal defense, harm to his reputation, personal pain and suffering, etc., are not alleged to have flown from the issuance of the formal instrument of prosecution, as distinct from the ensuing assertion of custody, and that Albright thus has not shown a substantial deprivation of liberty from the mere initiation of prosecution. *Id.* Souter noted that such injuries usually occur only after an arrest or other Fourth Amendment seizure. *Id.* —— U.S. at —— – ——, 114 S.Ct. at 821–22.

---

**3.** Such an analysis would be applicable in the case at bar as Arkansas provides a tort remedy for malicious prosecution. *See, e.g., Miles v. Southern,* 297 Ark. 274, 760 S.W.2d 868 (1988). Kennedy did note, however, that if a State did not provide a tort remedy for malicious prosecu-

tion, there would be force to the argument that the malicious initiation of a baseless criminal prosecution infringes an interest protected by the Due Process Clause and enforceable under § 1983. 114 S.Ct. at 819.

With the Supreme Court's opinion in *Albright v. Oliver*, a majority of the Justices (the plurality and Justice Souter) have concluded on the basis of facts not unlike those at issue in this case that a claimed right to be free from criminal prosecution except upon probable cause must be judged under the Fourth Amendment rather than the Due Process Clause of the Fourteenth Amendment.[4] Thus, plaintiff's claim that he was "arrested and prosecuted without probable cause for a crime that never happened," see Complaint, at ¶ 1, may only be judged under the Fourth Amendment.[5]

■ It is worth noting that even without benefit of the Supreme Court's opinion in *Albright v. Oliver*, the Court would grant summary judgment on plaintiff's due process claim on the basis of the Eighth Circuit's opinion in *Gunderson v. Schlueter*, 904 F.2d 407 (8th Cir.1990). In that case, a conservation officer named Kenneth Schlueter who "appears to have acted on a personal vendetta" brought criminal charges against plaintiff Victor Gunderson, a resort operator, for various fish and game violations. Beginning in 1984 Schlueter singled out customers of Gunderson's resort for more frequent spot checks and strict enforcement of fish and game laws. Gunderson complained to Schlueter's supervisor, and Schlueter told Gunderson something to the effect that, "people who file complaints on me live to regret it." Schlueter then began an undercover investigation of Gunderson that could be characterized as harassment and which led to criminal charges. Specifically, Schlueter arranged for two other officers, using false names, to schedule a guided fishing trip with Gunderson. One of the officers, claiming he was issued a citation for fishing without a license, asked Gunderson to issue him a backdated license to avoid the fine. After "repeated entreaties and a threat to

cancel the trip, Gunderson acceded and issued the illegal license." The officers also arranged for Gunderson to participate in bear hunting violations by shooting two caged bears, dumping them on the road, and then asking Gunderson to provide their license tags for the officers to attach to the bears before transport to the taxidermist, which he did. The plaintiff was acquitted of the subsequent charges and brought a 42 U.S.C. § 1983 suit.

The Eighth Circuit concluded that the officer's conduct, while "objectionable and perhaps born of a personal animosity toward plaintiff," did not rise to the level needed to prove a due process violation. 904 F.2d at 411. The Court stated:

> The Supreme Court has acknowledged that outrageous conduct by law enforcement authorities that "shocks the conscience" might violate due process even without a procedural violation. . . .
>
> [T]he court has suggested the doctrine can apply when law enforcement authorities go too far in manufacturing a crime and inducing a defendant into it. . . .
>
> The level of "outrageousness" needed to prove such a due process violation, however, is quite high. . . .
>
> This court has never held law enforcement undercover conduct to have reached this level of outrageousness. . . .
>
> [W]e have stressed that "[g]overnment agents may go a long way in concert with the individual in question without violating due process."

*Id.* at 410–11 (citations and footnotes omitted). *See also United States v. Sileven*, 985 F.2d 962, 967 (8th Cir.1993) (quoting *Gunderson*, 904 F.2d at 410–11).

As noted in *Gunderson*, the Eighth Circuit, despite numerous opportunities, has

---

**4.** Alternatively, six Justices would find that plaintiff does not state a due process claim in this case given the plurality's conclusion that a claimed right to be free from criminal prosecution except upon probable cause must be judged under the Fourth Amendment, and Justice Kennedy's and Justice Thomas's conclusion that, even assuming malicious prosecution is otherwise protected by the Due Process Clause, such a claim is not actionable under 42 U.S.C. § 1983 where the

State provides an adequate post-deprivation remedy, as does Arkansas. *See* footnote 3.

**5.** At the hearing on defendants' motion for summary judgment, plaintiff's counsel, Mr. Edward G. Adcock, conceded that under the facts of this case, his Fourteenth Amendment claim appears to be foreclosed by the Supreme Court's decision in *Albright v. Oliver*. The Court appreciates Mr. Adcock's candor in this matter.

never held law enforcement undercover conduct to have reached the level of outrageousness necessary to establish a deprivation of substantive due process. This case does not differ significantly from the due process claim that was considered and rejected in *Gunderson*, and the Court finds that the police conduct in this case was not so outrageous as to deprive plaintiff of the due process of law. *Cf. United States v. Kummer*, 15 F.3d 1455 (8th Cir.1994).

### B. Probable Cause

The Court denies defendants' motion for summary judgment with respect to plaintiff's claim that his arrest was without probable cause and deprived him of his Fourth Amendment rights. An officer has probable cause to arrest a suspect without a warrant if the "facts and circumstances within the officer's knowledge ... are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Arnott v. Mataya*, 995 F.2d 121, 123 (8th Cir.1993) (quoting *Michigan v. DeFillippo*, 443 U.S. 31, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979)). An officer's improper motives are irrelevant for purposes of determining the existence of probable cause, *Foster v. Metropolitan Airports Comm'n*, 914 F.2d 1076, 1079 (8th Cir.1990), and the fact that the person arrested is later found innocent is not material. *Arnott v. Mataya*, 995 F.2d at 123 (citations omitted).

According to plaintiff's version of the facts, the defendants had no probable cause to arrest him as they knew that he was engaged in an investigation of Thomas. Defendants admit in their brief in support of their motion for summary judgment that if plaintiff possessed cocaine in an effort to get Thomas to show that she had cocaine, then plaintiff's possession of cocaine would be innocent or justified conduct. Thus, the Court finds

---

6. The Supreme Court has emphasized that immunity should be determined at the earliest possible stage in litigation. *See Arnott v. Mataya*, 995 F.2d at 123 (citing *Hunter v. Bryant*, ─── U.S. ───, ───, 112 S.Ct. 534, 537, 116 L.Ed.2d 589 (1991)). Indeed, this "threshold immunity question" must be decided before discovery proceeds.

there is a material fact dispute regarding the existence of probable cause.

Defendants argue that even if they are not entitled to judgment on the merits, they are shielded from 42 U.S.C. § 1983 liability by the doctrine of qualified immunity. The Court disagrees. The test for qualified immunity is "whether a reasonable officer could have believed [the arrest] to be lawful, in light of clearly established law and the information the [arresting] officers possessed." *Arnott v. Mataya*, 995 F.2d at 123 (quoting *Anderson v. Creighton*, 483 U.S. 635, 641, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987)). In this regard, even if probable cause is in fact absent, defendants may be entitled to qualified immunity. *Id.* (citations omitted). If an officer alleges conduct by the arrestee giving rise to probable cause and those facts are undisputed, the qualified immunity defense is available to the officer. *Id.* at 123–24. However,

> [t]his does not mean ... that courts may always decide questions of qualified immunity on summary judgment. If the arrestee challenges the officer's description of the facts and presents a factual account where a reasonable officer would not be justified in making an arrest, then a material dispute of fact exists. Where there is a genuine issue of material fact surrounding the question of plaintiff's conduct, we cannot determine, as a matter of law, what predicate facts exist to decide whether or not the officer's conduct clearly violated established law.

*Id.* at 124 (citations omitted).

Here, the Court finds that plaintiff has presented a factual account whereby a reasonable officer could not have believed that his arrest was lawful in light of clearly established law. The Court therefore rejects defendants' qualified immunity defense.[6]

---

*Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). This case has been pending since December 1990 and counsel for defendants offer no explanation as to why this issue was not raised until fourteen days before trial.

V.

In sum, the Court hereby grants in part and denies in part defendants' motion for summary judgment.

IT IS SO ORDERED.