870 F.2d 1400
 Claude T. WEIMER, Individually and as Representative of all
persons in the same class, Appellants,
v.
Paul AMEN, in his official capacity as former director of
the Department of Banking and Finance of the State of
Nebraska, and personally; S.E. Copple; Marvin Copple;
Members of the Nebraska Depository Institution Guarantee
Corporation; Commerce Savings of Columbus, Inc., Employer
of Ken Wellman; First Savings Company, Employer of William
Beckman; First National Bank; Norwest Corporation, Owner
of First National Bank, Grand Island; Commerce Group, Inc.,
Owner of Commerce Savings of Columbus, Inc., and Commerce
Savings Lincoln, Inc., and Commerce Savings Scottsbluff,
Inc., Employer of Douglas Alford; Provident Federal Savings
Bank, Owner of Liberty Savings Company; American State
Savings Company, Employer of Roy Ashcraft; Federal Deposit
Insurance Corporation (FDIC); Commerce Savings Scottsbluff,
Inc., Employer of Tim Spoeneman; Liberty Savings Company,
Employer of Dennis Applebee; North East Savings and
Investment Company, Employer of Herb Hermann; Union Bank
and Trust Company, Owner of North East Savings and
Investment Company; Marvin Copple, Director NDIGC and
officer of Commonwealth from before 1975 until after
November 1, 1983; Ken Wellman; William Beckman; Douglas
Alford; Alfred Adams; Kenlon H. Hake; Roy Ashcraft;
Darrell Anderson; Herb Heumann; Tim Spoeneman; Dennis
Applebee and S.E. Copple, Director NDIGC and officer of
Commonwealth from before 1975 until after November 1, 1983, Appellees.
 No. 87-2345.
 United States Court of Appeals,
Eighth Circuit.
 Submitted May 11, 1988.
Decided March 23, 1989.
 
 Louis M. Thrasher and Robert Gibson, Lincoln, Neb., for appellants.
 Gary L. Dolan, Lincoln, Neb., for appellees.
 Before JOHN R. GIBSON, Circuit Judge, and PECK* and HENLEY, Senior Circuit Judges.
 JOHN R. GIBSON, Circuit Judge.
 
 
 1
 Claude T. Weimer, both individually and as representative of a class of depositors and holders of other obligations of the failed Commonwealth Savings Bank, brought this action under 42 U.S.C. Sec. 1983 against the former Director of the Nebraska Department of Banking and Finance, Paul Amen, members of the Nebraska Depository Insurance Guaranty Corporation (Guaranty), and Marvin and S.E. Copple, former officers of Commonwealth. The suit alleged a conspiracy between Amen and the other defendants to violate Nebraska law, and to fraudulently induce depositors to place their assets in the insolvent Commonwealth Bank. Weimer claimed that the presence of Amen transformed the alleged conspiracy from a matter of state concern to the level of a constitutional tort. Specifically, he claimed violation of both the substantive and procedural aspects of the fourteenth amendment due process clause. The district court[1] granted motions to dismiss for failure to state a claim on which relief could be granted, Fed.R.Civ.P. 12(b)(6), and denied Weimer leave to amend the complaint, leading to the present appeal. Since we believe that even the proposed amended complaint fails to allege any deprivations of Weimer's constitutional rights cognizable under section 1983, we affirm.
 
 I.
 
 2
 This litigation arises out of the failure of the Commonwealth Savings Bank, and the subsequent inability of Guaranty to fulfill its obligations. Weimer and his fellow class members all held accounts and/or other instruments and obligations issued by Commonwealth. Since the district court dismissed under Rule 12(b)(6), we state the facts as alleged in Weimer's two complaints.
 
 
 3
 In 1976 the state of Nebraska passed the Nebraska Depository Institution Guaranty Corporation Act, Neb.Rev.Stat. Secs. 21-17,127 to 21-17,145 (1987). The purpose of this act was to allow the chartering of local deposit guaranty corporations that member institutions could use in lieu of acquiring federal insurance. Guaranty received a charter under the act in 1978, and several of the named defendants were appointed to its board of directors. Amen was in charge of the Department of Banking and Finance at this time, giving him some regulatory authority over Guaranty, and requiring him to work closely with the defendant board members. Guaranty initially decided to require all member institutions to advertise that all accounts were guaranteed to the amount of $10,000 per account, and enacted an appropriate by-law. At the time this by-law was adopted the guaranty fund was sufficient to cover only 2% of the total deposits involved.
 
 
 4
 The Commonwealth Savings Bank became a member of Guaranty in August of 1979. Commonwealth was then the largest industrial loan company in Nebraska, with deposits of over $78,000,000. Unfortunately, Commonwealth was also in serious financial trouble as a result of felonious conversions made by Marvin and S.E. Copple, two officers of the bank. Despite the danger to the guaranty fund posed by Commonwealth's instability, Guaranty voted to increase the coverage to $30,000 per account in April of 1980, and to require all members to advertise this fact. The inevitable finally occurred in November of 1983, when Amen declared Commonwealth insolvent and the Department of Banking and Finance became the Receiver. Guaranty's reserves, weak to begin with, had been further depleted in April of that year by improper transfers and pledges to the Copples in the amount of $800,000. Guaranty became insolvent, causing the claimed losses to all depositors and instrument holders.
 
 
 5
 Weimer's original complaint centered on the theory that Amen and the other defendants had actively conspired to deprive the depositors of their assets by violating Nebraska law. He claimed that Amen violated his statutory duties as Director of the Department of Banking and Finance by failing to safeguard Commonwealth's deposits; specifically, by ignoring his legal duty to report Commonwealth's financial problems, by covering up the illegal conversions of the Copples, and by fraudulently engaging in efforts to induce depositors to retain or increase their deposits with Commonwealth. Weimer additionally claimed that Guaranty's board of directors was fully aware of Commonwealth's financial situation at all times, and that Amen and the board conspired to pass the by-laws requiring member advertising of the guaranty for the express purpose of defrauding depositors.
 
 
 6
 In considering motions to dismiss the complaint, the district court was willing to assume that Amen and the other defendants had acted under color of state law, and that the depositor's losses constituted a deprivation of property, but it found no violation of due process. Recognizing the holdings of this court with respect to substantive due process, it concluded "whatever the boundaries of the denial of substantive due process rights in this Circuit, the Court finds plaintiffs' complaint herein does not state such a claim." Weimer v. Amen, No. CV-86-L-757, slip op. at 5 (D.Neb. July 2, 1987). Further, it held that since the state of Nebraska had provided adequate post-deprivation remedies to the depositors, the procedural due process claim was barred by Parratt v. Taylor, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981) and Hudson v. Palmer, 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984). The complaint was therefore dismissed.
 
 
 7
 Weimer then sought leave to file an amended complaint, alleging the same violations of due process, but proceeding upon a new theory. Instead of asserting the illegality of Amen's action, the new complaint characterized the scheme and conspiracy to defraud as involving acts that were intentional, willful and with reckless disregard for Weimer's property. It also alleged that the acts were accomplished with bad faith, knowledge, deliberation and malice, and were an arbitrary exercise of the powers of government to fraudulently deprive the plaintiffs of their property without due process of law. The prestige and power of the state was alleged to have supported the fraudulent inducement to retain deposits. It further claimed the fraud concealed from the plaintiffs the fact that their property was being deprived, which constituted inherently and fundamentally unfair state action. Additional specific allegations concerning the overall scheme and references to specific individuals were added. Additionally, Weimer claimed that the available state remedies were inadequate, particularly in light of the fact that attorney's fees were not available. The district court denied leave to amend, on the grounds that the proposed revisions did nothing to alter the shortcomings of the original pleading, and Weimer appealed.
 
 II.
 
 8
 Weimer argues that since he is basing his procedural due process claims on intentional acts committed by Amen pursuant to an established state procedure, Parratt and Hudson do not apply.[2] These cases provide that for certain claims based on denial of procedural due process there can be no constitutional violation if the state has provided an adequate postdeprivation remedy. Weimer believes these cases to be inapplicable, instead relying on Logan v. Zimmerman Brush Co., 455 U.S. 422, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982) as authority to permit federal relief in this situation.
 
 
 9
 The distinction between Parratt and Logan is one of loss of property "as a result of a random and unauthorized act by a state employee," Parratt, 451 U.S. at 541, 101 S.Ct. at 1916, and loss caused by the state system itself, Logan, 455 U.S. at 436, 102 S.Ct. at 1158. Parratt involved the negligent loss of a prisoner's property by a state prison guard, and a resulting section 1983 claim by the prisoner claiming violation of procedural due process. Although state remedies were available, the prisoner instead chose to seek federal relief. The Court recognized that since the guard's actions were random, unforeseeable, and unauthorized by state law, the state did not have the opportunity to provide any other process:
 
 
 10
 the loss is not a result of some established state procedure and the State cannot predict precisely when the loss will occur. It is difficult to conceive of how the State could provide a meaningful hearing before the deprivation takes place. The loss of property, although attributable to the State as action under "color of law," is in almost all cases beyond the control of the State. Indeed, in most cases it is not only impracticable, but impossible, to provide a meaningful hearing before the deprivation.
 
 
 11
 Parratt, 451 U.S. at 541, 101 S.Ct. at 1916. Thus, postdeprivation relief provided the process that was due. Hudson applied the same reasoning to intentional destruction of property by a prison guard. "Arguably, intentional acts are even more difficult to anticipate because one bent on intentionally depriving a person of his property might well take affirmative steps to avoid signalling his intent." Hudson, 468 U.S. at 533, 104 S.Ct. at 3203-04.
 
 
 12
 Logan, by contrast, involved the application of the Illinois Fair Employment Practices Act to bar a claim because the Commission in charge had failed to act within the statutory period of time. The state attempted to rely on Parratt, but the Court explained that this was a totally different situation. "Here, in contrast, it is the state system itself that destroys a complainant's property interest, by operation of law, whenever the Commission fails to convene a timely conference--whether the Commission's action is taken through negligence, maliciousness, or otherwise. Parratt was not designed to reach such a situation." Logan, 455 U.S. at 436, 102 S.Ct. at 1158. Again, the process due to correct random unauthorized acts was distinguished from that required where established state procedures caused the loss.
 
 
 13
 The question in this case is therefore whether Amen's actions were the random and unforeseeable acts of an employee, or established state procedure. Weimer argues that the state, through its highest policymaking official, engaged in systemic fraud and that the state system itself as manipulated deprived him of his property. This, he argues, is not random and unauthorized but foreseeable, and accordingly Logan applies. The predeprivation process due was operation of the system free of fraudulent administration by the high officials. Weimer's argument necessarily requires that we examine both the claimed fraudulent conduct and Amen's status as a high policymaking official. Turning first to the fraud, we think it evident that the claimed manipulation by systemic fraud demonstrates that Weimer's complaint is focused not on the state procedure or state system itself, but rather the fraud, which was a violation of, not an exercise of, Amen's responsibilities. The fraud is, of its inherent nature, unauthorized, random and unforeseeable, and falls under Parratt and Hudson rather than Logan.
 
 
 14
 Similarly, the arguments based on Amen's policymaking position are not convincing. Reading the facts alleged in the complaint and the proposed amended complaint as favorably to Weimer as possible, however, and examining the Nebraska statutes in question, we are simply unable to conclude that Amen's actions constituted anything that might fairly be called official policy. Weimer characterizes Amen as "the highest responsible official" of the state of Nebraska, but Nebraska law gives Amen's office surprisingly little authority to deal with this situation. Weimer points to a statutory duty to report insolvencies and other financial problems, but this duty is not discretionary. Amen's failure to report what he knew constituted a clear violation of state law.
 
 
 15
 Additionally, Amen's regulatory powers were severely restricted. Although Amen had the statutory power to enact reasonable rules and regulations, Neb.Rev.Stat. Sec. 21-17,145, the actual guaranty amount and advertising rules were in fact mere Guaranty by-laws. The limit of Amen's active official authority in the Guaranty scheme was the issuance of the charter. All other allegations about Amen's activities concern either activity done outside the bounds of his office, or a failure to act in an official manner when required by law to do so; in either event random and unforeseen occurrences from the state's view. Nebraska did not authorize Amen to lure investors with false information, condone fraudulent transfers of bank assets, and neglect his duties to disclose pertinent facts. State policy dictated one procedure--Amen made a unilateral choice to follow another.
 
 
 16
 Weimer further argues that Amen was a Nebraska official in a position to offer predeprivation process. Even if true, this fact is immaterial. Hudson plainly states that the controlling question is whether the state is in a position to offer predeprivation process. Whether an individual employee is in such a position is of no consequence. Hudson, 468 U.S. at 534, 104 S.Ct. at 3204. Similar conspiracies to circumscribe statutory obligations have been ruled random and unauthorized acts by other circuits. See, e.g., Schaper v. City of Huntsville, 813 F.2d 709, 714-16 (5th Cir.1987) (conspiracy during termination hearing held unauthorized); Holloway v. Walker, 790 F.2d 1170, 1173 (5th Cir.1986) (conspiracy to deny fair trial determined to be a random act).
 
 
 17
 In summary, Weimer's main argument is that "[t]he predeprivation process due to Plaintiffs was the operation of the State's statutory and administrative regulatory and enforcement system, free of fraudulent manipulation by the Defendants." Brief of Appellant at 26. In our view, no statement could be a stronger argument for application of the Parratt rule. The statement concedes that the state system itself did not cause the loss, but rather that Amen and the others improperly manipulated the state system. These acts were certainly random and unauthorized, and the state of Nebraska could only offer postdeprivation remedies. The district court found those remedies to be adequate, and we have no reason to disagree. State remedies are not inadequate simply because they do not allow for the recovery of attorneys' fees. See Wilson v. Beebe, 770 F.2d 578, 584 (6th Cir.1985). Accordingly, the Parratt rule was correctly applied, and the proposed amended complaint fails to state a valid claim based on denial of procedural due process.
 
 III.
 
 18
 As an alternative ground for relief, Weimer states that Amen's actions deprived the depositors of their property in violation of substantive due process of law. In Weimer's view, "State action, which deprives plaintiffs of their properties, violates substantive due process, unless it has at least a rational relationship to a proper State objective." Brief of Appellant at 14 (emphasis in original). Finally, Weimer argues that Parratt and Hudson do not apply to section 1983 claims based on denial of substantive due process. To resolve these questions, we must rely on the general theories behind both substantive due process and the Parratt decision.
 
 A.
 
 19
 The cornerstone of due process is the prevention of abusive governmental power. See Daniels v. Williams, 474 U.S. 327, 330-31, 106 S.Ct. 662, 664-65, 88 L.Ed.2d 662 (1986). Due process may dictate that life, liberty, or property can be taken by the state only when certain procedures are followed, or it may prevent the state action no matter what procedures are made available. Id. We have already decided the merits of Weimer's claim of the first type, so we need only concern ourselves with the latter issue.
 
 
 20
 This court, as the district court correctly noted, has placed a heavy burden on one wishing to extend the substantive due process doctrine into new arenas. The conduct involved must "shock [the] conscience or otherwise offend our judicial notions of fairness." Fitzgerald v. Williamson, 787 F.2d 403, 408 (8th Cir.1986). It must be conduct "offensive to human dignity." New v. Minneapolis, 792 F.2d 724, 726 (8th Cir.1986). We have yet to decide whether substantive due process provides a right to be free from arbitrary and capricious state action. See Moore v. Warwick Pub. School Dist. No. 29, 794 F.2d 322, 328-29 (8th Cir.1986); Harrison v. Springdale Water & Sewer Comm., 780 F.2d 1422, 1428 n. 10 (8th Cir.1986). We have also held that to the extent our cases recognize a constitutional right to substantive due process, that right is no greater than the right to procedural due process. See Buhr v. Buffalo School Dist. No. 38, 509 F.2d 1196, 1202 (8th Cir.1974).
 
 
 21
 In short, none of our previous recognitions of substantive due process come close to the right asserted by Weimer. Other circuits have considered deprivations of property as involving only procedural due process rights. See, e.g., Brown v. Brienen, 722 F.2d 360, 367-68 (7th Cir.1983) (Flaum, J., concurring). We think it evident that Weimer seeks to have Amen's conduct declared a violation of due process simply because it violated state law, and we refuse to do this. In Lemke v. Cass County, Nebraska, 846 F.2d 469, 471-73 (8th Cir.1987) (en banc) (Arnold, J., concurring), five judges of this court explicitly stated that something more than a violation of state law must be claimed to establish a substantive due process violation, and commented that a complaint alleging no more should be dismissed. See also Edwards v. Arkansas Power & Light Co., 683 F.2d 1149, 1160 (8th Cir.1982) (Arnold, J., concurring) (violation of state law, without more, does not amount to a constitutional tort). We hold that the type of illegal acts allegedly performed by Amen are not the type of abusive governmental action completely prohibited by due process, and that Weimer's complaint therefore fails to state a valid substantive due process claim.
 
 B.
 
 22
 Moreover, we do not believe that under these circumstances Weimer could state a valid section 1983 claim based on denial of substantive due process even if he were to allege something more than Amen's illegal activity. In situations where procedural due process claims alleging property deprivation are prohibited in section 1983 actions by Parratt, claims based on the same actions but alleging denial of substantive due process should be barred as well. To hold otherwise would be directly contrary to the concerns leading to the Parratt rule in the first place. See Schaper, 813 F.2d at 718; Brown, 722 F.2d at 368-69 (Flaum, J., concurring). As we have stated, Amen's actions were random and unauthorized, and the state of Nebraska could do nothing to change the circumstances. In addition, the state offered postdeprivation remedies that we have already held to be adequate. To allow a substantive due process claim under these circumstances
 
 
 23
 would allow a plaintiff to challenge a deprivation of a property interest on the ground that it resulted from arbitrary and capricious state action, while, under Parratt/Hudson, he would not be able to state a claim for the deprivation of the same right on the ground that it resulted from a random and unauthorized act of a state official. This remarkable result clearly was not envisioned by the court in Parratt or Hudson.
 
 
 24
 Schaper, 813 F.2d at 718 (footnote omitted). An action cannot be "arbitrary or capricious" if it is neither authorized nor preventable by the state. "[N]othing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors." DeShaney v. Winnebago County Dept. of Social Services, --- U.S. ----, ----, 109 S.Ct. 998, 1003, 103 L.Ed.2d 249 (1989). Yet to allow a due process claim to be based on the unauthorized actions of a state official, merely by characterizing the claim as "substantive" rather than "procedural," would impose a state duty to protect against private action, for state officials wandering outside of their authority act for themselves, not the State. Cf. Ex parte Young, 209 U.S. 123, 159-60, 28 S.Ct. 441, 453-54, 52 L.Ed. 714 (1908) (actions of state officer enforcing unconstitutional law not attributable to state for eleventh amendment purposes). Since Weimer's complaint fails to allege a substantive due process claim materially different from his barred procedural due process claim, the substantive claim must be barred as well.
 
 IV.
 
 25
 District courts are granted the discretion of whether to allow leave to amend complaints, Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 330, 91 S.Ct. 795, 802, 28 L.Ed.2d 77 (1971), and we therefore review under an abuse of discretion standard. It is settled law that district courts have the power to deny leave to amend if the proposed changes would not save the complaint. See Holloway v. Dobbs, 715 F.2d 390, 392-93 (8th Cir.1983). In view of the foregoing discussion, we feel that even the proposed amended complaint could not withstand a motion to dismiss. Although that complaint makes broad references to the other defendants, attempting to characterize them as also being state actors, Amen was the central figure in the alleged scheme. Since the claims against Amen fail, the claims against the other defendants must fail as well. We therefore affirm the ruling of the district court.[3]
 
 
 
 *
 The HONORABLE JOHN W. PECK, Senior Circuit Judge for the United States Court of Appeals for the Sixth Circuit, sitting by designation
 
 
 [1]
 The Honorable Lyle E. Strom, United States District Judge for the District of Nebraska
 
 
 [2]
 Several of the defendants argue that mere negligence by Amen is claimed, thus foreclosing relief under Daniels v. Williams, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). We see more than mere allegations of negligence in the proposed amended complaint
 
 
 [3]
 Some of the appellees urge that Weimer's claim is barred in view of the district court's earlier dismissal of Weimer's RICO action. That decision is on appeal in a companion case, No. 87-2331, and is being held until the Supreme Court issues its opinion in H.J. Inc. v. Northwestern Bell Tel. Co., 829 F.2d 648 (8th Cir.1987), cert. granted, --- U.S. ----, 108 S.Ct. 1219, 99 L.Ed.2d 420 (1988), which was argued on November 8, 1988. In view of our decision today, we need not reach these arguments