**Frank E. VENNES, Jr.,**
**Plaintiff–Appellant,**

v.

**AN UNKNOWN NUMBER OF UNIDEN-TIFIED AGENTS OF THE UNITED STATES of America, Defendants–Appellees.**

No. 93–1737.

United States Court of Appeals,
Eighth Circuit.

Submitted Dec. 17, 1993.
Decided June 16, 1994.

---

Irvin Nodland, Bismarck, ND, argued, for appellant.

Jonathan A. Wasserman, Washington, DC, argued (Jonathan S. Cohen, appeared on the brief), for appellee.

Before LOKEN, Circuit Judge, HEANEY, Senior Circuit Judge, and HANSEN, Circuit Judge.

LOKEN, Circuit Judge.

After pleading guilty and nolo contendere to money laundering, firearm, and drug offenses and serving a lengthy prison sentence, Frank E. Vennes, Jr., commenced this action against unnamed federal agents seeking damages in excess of $10,000,000 under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). Vennes alleged that the agents had conspired to violate his rights under the Fourth, Fifth, Sixth, and Eighth Amendments by coercing and entrapping him into committing the charged crimes, thereby causing "an illegal indictment" to issue, and by seizing his business through an unlawful Internal Revenue Service ("IRS") jeopardy assessment. The district court[1] dismissed Vennes's claims against the IRS agents, concluding that his remedies under the Internal Revenue Code preclude this type of *Bivens* action. The court granted summary judgment in favor of the remaining defendants on the ground that Vennes "has had his day in court, and on that day entered pleas of guilty or nolo contendere to the charges arising in part from the allegedly

1. The HONORABLE PATRICK A. CONMY, United States District Judge for the District of North Dakota.

coerced activity." Vennes appeals. We affirm.

## I.

In August 1986, IRS agents investigating suspected money laundering by certain North Dakota car dealers were told that Vennes, a Bismarck pawnshop owner, had made numerous trips to Switzerland and might have experience in transferring funds to a foreign country. An undercover agent, posing as a Chicago investor, contacted Vennes and asked for help in transferring cash abroad. Vennes later admitted that in the next three months he and his codefendants received $370,000 from the undercover agent and transferred it, minus their substantial commissions, to the Bahamas, the Isle of Man, and Switzerland without complying with federal currency transaction reporting laws. In the last transaction, Vennes personally delivered $100,000 to Switzerland, where his associates lost or stole it.

In May 1987, Vennes was charged in three indictments with numerous money laundering, firearm, and drug offenses. Acting on the advice of his attorney, whom he now accuses of ineffective assistance, Vennes entered into a plea agreement under which he pleaded guilty to one count of the money laundering indictment, and also pleaded nolo contendere to one count of illegally selling a firearm in violation of 18 U.S.C. § 922(b)(3) and to an information charging that he used a telephone to facilitate distribution of cocaine in violation of 21 U.S.C. § 843(b).

At the change-of-plea hearing, the district court specifically questioned Vennes and counsel about the unusual nolo contendere pleas. Defense counsel explained that Vennes was "prepared to defend himself on the basis of entrapment [and] outrageous government conduct" but wished to plead no contest because those defenses are "extremely difficult" to prove. The Assistant United States Attorney responded that the government had not insisted on a plea of guilty because Vennes "could make a fair case" that he entered into the illegal firearm and drug transactions in an attempt to recoup $100,000 for the undercover agent, whom Vennes feared was an organized crime figure. The district court

accepted these pleas after confirming that they were knowing and voluntary, that Vennes was in fact guilty of the money laundering charge, and that he understood that his nolo pleas would be treated at sentencing as pleas of guilty.

At sentencing, Vennes's attorney stated that the presentence report was complete, fair, and "thoroughly professional." He further stated that he was not "in any way indicating that these government agents acted in an improper fashion," but urged that Vennes be sentenced to only two years in prison because he became "involved in the drugs and the guns" out of fear that he and his family would suffer if he did not recoup the $100,000. After a lengthy hearing, the district court sentenced Vennes to five years in prison, three years for the money laundering offense and one consecutive year for each of the other two offenses.

Vennes did not appeal, but he later sought post-conviction relief under 28 U.S.C. § 2255. His first petition alleged ineffective assistance of counsel because his trial attorney did not seek dismissal of the indictments on the grounds of entrapment and outrageous government conduct. We denied relief, concluding:

> Although Vennes now alleges that counsel was ineffective, he has failed to show any prejudice resulting from counsel's alleged deficiencies. In particular, Vennes does not make any showing that he would have been willing to stand trial on any of the multitudinous charges on which he was indicted. We observe that his plea bargain resulted in the dismissal of many of those charges and in a sentence that is far lighter than the maximum sentence for the crimes to which he pled either guilty or no contest.

*Vennes v. United States,* 871 F.2d 1091 (8th Cir.1988). In a second § 2255 petition, Vennes claimed that the government breached his plea agreement because information he provided while cooperating with federal investigators found its way into his presentence report, which ultimately affected his eligibility for parole. The district court denied this § 2255 petition after an evidentiary

hearing, and we affirmed. *Vennes v. United States,* 915 F.2d 1577 (8th Cir.1990).

Following his release from prison, Vennes commenced this *Bivens* action, seeking damages from unnamed[2] agents for entrapment, outrageous conduct, and willful violation of the tax laws. The government appeared and moved to stay discovery—a motion Vennes did not contest—and to dismiss the complaint on grounds of failure to state a claim and qualified immunity. In response, Vennes alleged that he had personally delivered $100,-000 to Switzerland for the undercover agent, where this money was lost or stolen. According to Vennes, the undercover agent then advised that he was not a Chicago investor, but a member of the Chicago underworld, and Vennes must recoup this loss or the Mafia would kill him and his family. Prompted by these threats, Vennes agreed to sell firearms illegally to undercover agents of the Bureau of Alcohol, Tobacco and Firearms, and to sell cocaine to undercover agents of the Drug Enforcement Administration. He claims that, as a result of this outrageous government conduct, he was prosecuted and imprisoned and lost his business, his reputation, and, due to a divorce, his family.

The district court granted summary judgment dismissing the claims against the criminal investigators on the ground that those claims were barred by Vennes's pleas of guilty and nolo contendere in his criminal case. The court dismissed the claims against the IRS agents involved in the tax levy on the ground that such *Bivens* claims are precluded by the remedies provided in the Internal Revenue Code. We review both aspects of the district court's decision *de novo. See Concerned Citizens of Neb. v. United States Nuclear Regulatory Comm'n,* 970 F.2d 421, 425 (8th Cir.1992). The government also argued to the district court, and asserts on appeal, that all defendants are entitled to qualified immunity because they did not violate "clearly established statutory or consti-

tutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). The district court did not reach this issue, and neither do we.

## II.

■ The unique issue raised by this appeal is whether the district court erred in granting summary judgment dismissing Vennes's claim that the undercover agent's alleged death threats were outrageous government conduct that violated his due process rights. Vennes clearly has no procedural due process claim. In response to the three 1987 indictments, he raised the defenses of entrapment and outrageous conduct and then bargained away those defenses, exchanging guilty and nolo contendere pleas for a relatively light sentence. He never moved to withdraw those pleas and did not appeal his conviction or sentence. His § 2255 petition alleged ineffective assistance of counsel and outrageous government conduct; the district court denied that petition on the merits, and we affirmed.

Vennes instead argues that the agent's outrageous conduct violated his right to *substantive* due process, and that this claim survived his guilty plea and unsuccessful § 2255 petition. Vennes relies primarily on our decision in *Gunderson v. Schlueter,* 904 F.2d 407 (8th Cir.1990). In *Gunderson,* a resort owner acquitted of criminal charges filed a 42 U.S.C. § 1983 due process claim against a state conservation officer who allegedly contrived the criminal case. We affirmed the grant of summary judgment dismissing this claim but observed that, "we may some day be presented with a situation in which the conduct of law enforcement agents is so outrageous that due process principles [are violated]." 904 F.2d at 410, quoting *United States v. Russell,* 411 U.S. 423, 431–32, 93 S.Ct. 1637, 1642–43, 36

---

2. Vennes failed to name or serve *any* agent, even though many of the undercover investigators were named in his indictments or identified elsewhere in the record of his criminal case. On appeal, the government argues that this is a sham *Bivens* action, a disguised claim against the

United States that should be barred by sovereign immunity. Vennes's conclusory, overbroad complaint lends considerable credence to this contention. However, it was not raised in the district court, so we do not consider it on appeal.

L.Ed.2d 366 (1973).[3] Vennes argues that this is the "some day" foreshadowed in *Gunderson*—if he can prove that "[a]gents of the federal government threatened to kill Frank Vennes and his family if he refused to engage in criminal conduct, so he did," he will be entitled to damages under *Bivens* and *Gunderson*. Like the district court, we disagree. There are a number of factors that persuade us that Vennes cannot establish a right to relief under *Bivens*.

■ First, it is significant that Vennes is asserting this due process claim, not in defending the criminal charges that grew out of his dealings with the undercover agents, but in a civil damage action commenced after he pleaded guilty and served a prison sentence for those crimes. A *Bivens* action may be brought on due process grounds. *See Davis v. Passman*, 442 U.S. 228, 245–48, 99 S.Ct. 2264, 2277–79, 60 L.Ed.2d 846 (1979). But courts must always determine that a new type of *Bivens* claim "involves no special factors counselling hesitation in the absence of affirmative action by Congress." *Bivens*, 403 U.S. at 396, 91 S.Ct. at 2005. We conclude there are such special factors here. In *Gunderson*, we rejected the substantive due process claim in part because, "[f]inding a due process violation here would bring us too close to converting every successful entrapment defense into a section 1983 action for damages." 904 F.2d at 411. Vennes of course proposes an even greater conversion, for he did not prove his entrapment and outrageous conduct defenses, he pleaded guilty or no contest to some of the allegedly coerced criminal offenses. Expanding *Bivens* in this fashion would have a chilling effect on law enforcement officers and would flood the federal courts with constitutional damage claims by the many criminal defendants who leave the criminal process convinced that they have been prosecuted and convicted unfairly.

Second, the government argues that this claim should be collaterally estopped by Vennes's pleas of guilty and nolo contendere. We doubt that these pleas may be given such sweeping collateral estoppel effect. *See Haring v. Prosise*, 462 U.S. 306, 322 n. 11, 103 S.Ct. 2368, 2377, n. 11, 76 L.Ed.2d 595 (1983). However, they are highly relevant to the merits of this due process claim. The alleged deprivation of Vennes's rights occurred during the criminal investigation and resulted in his being charged with multiple crimes. By pleading guilty, Vennes elected to forego the post-deprivation process best suited to determining whether the agents in fact violated his due process rights—the criminal trial. Any procedural due process claims are therefore barred. *See Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981). Although Vennes claims a substantive due process violation, we have held that, when procedural due process claims under § 1983 are barred by *Parratt*, "claims based on the same actions but alleging denial of substantive due process should be barred as well." *Weimer v. Amen*, 870 F.2d 1400, 1406 (8th Cir.1989). The same principle should apply in a *Bivens* action, the federal law analogous to § 1983.

Third, although we have often noted that "outrageous police conduct" may give rise to a substantive due process defense to a criminal prosecution, in no case have we found government conduct sufficiently outrageous to establish this defense.[4] We have recognized that law enforcement officers "are required to resort to tactics which might be highly offensive in other contexts ... and agents may go a long way in concert with the individual in question without being deemed to have acted so outrageously as to violate

---

**3.** In *Hampton v. United States*, 425 U.S. 484, 96 S.Ct. 1646, 48 L.Ed.2d 113 (1976), a majority of the Supreme Court adhered to the outrageous-conduct due process principle articulated in *Russell*.

**4.** *See United States v. Kummer*, 15 F.3d 1455, 1459–60 (8th Cir.1994); *United States v. Gleason*, 980 F.2d 1183, 1187 (8th Cir.1992); *United States v. Huff*, 959 F.2d 731, 734–35 (8th Cir.), *cert. denied*, — U.S. —, 113 S.Ct. 162, 121

L.Ed.2d 110 (1992); *Gunderson*, 904 F.2d at 410 & n. 8 (collecting cases); *United States v. Johnson*, 767 F.2d 1259, 1275 (8th Cir.1985); *United States v. Reifsteck*, 535 F.2d 1030, 1034–35 (8th Cir.1976). *Compare United States v. Lard*, 734 F.2d 1290, 1296–97 (8th Cir.1984) (agent's conduct "in conceiving and contriving the crimes" "approached" the boundaries of substantive due process in a criminal prosecution).

due process." *United States v. Quinn,* 543 F.2d 640, 648 (8th Cir.1976). Granted, we would not endorse the use of death threats to coerce a defendant to commit charged offenses, but we are properly skeptical of such claims and may reasonably require that the defendant prove allegations of outrageous coercive conduct in the most timely and relevant proceeding, his criminal trial.

Fourth, we find fundamental, insurmountable flaws in Vennes's damage claims. Vennes seeks damages for the time he spent in prison and the indirect consequences of that imprisonment, his divorce and the failure of his business. Yet Vennes was imprisoned because he pleaded guilty or no contest to serious crimes. And three of his five years in prison were attributable to the money laundering offense that was committed before the alleged threats that form the core of his outrageous conduct claims. To the extent that the alleged outrageous government conduct was not the proximate cause of Vennes's injuries, his damage claims must fail as a matter of law.

In these circumstances, we conclude that the district court properly granted summary judgment dismissing Vennes's substantive due process claims. We do not condone undercover agents who pose as dangerous criminals and coerce others to commit crimes. But if Vennes was in fact the victim of such threats, he had many opportunities to seek redress before serving five years in prison for the resulting crimes. He could have complained to state or federal authorities about the threats; instead, he committed multiple firearm and drug offenses.[5] He could have raised entrapment, coercion, and outrageous conduct defenses at his criminal trial; instead, he pleaded guilty or no contest to three different crimes. He raised the outrageous conduct issue in his first § 2255 petition; that petition was dismissed on the merits. Under our decisions in *Gunderson* and *Weimer,* a post-conviction *Bivens* damage action will not lie.

## III.

■ There remains to be considered the district court's dismissal of Vennes's vague and conclusory tax claims, summarized in his brief on appeal as follows:

> The agents alleged [that Vennes owed] $250,000 in tax liability, instituted a jeopardy assessment, confiscated his business, forced a total asset sale and put him out of business when in fact he owed not a dime.

The district court dismissed these claims on the ground that a taxpayer's remedies under the Internal Revenue Code preclude such a *Bivens* action. Vennes cites us to no contrary authority, and we have found none. Though the Supreme Court has not addressed this precise question, it has strongly suggested that the district court correctly applied *Bivens:*

> When the design of a Government program suggests that Congress has provided what it considers adequate remedial mechanisms for constitutional violations that may occur in the course of its administration, we have not created additional Bivens remedies.

*Schweiker v. Chilicky,* 487 U.S. 412, 423, 108 S.Ct. 2460, 2468, 101 L.Ed.2d 370 (1988). *See McIntosh v. Turner,* 861 F.2d 524, 526 (8th Cir.1988) ("The result [of *Chilicky* ] is a sort of presumption against judicial recognition of direct actions for violations of the Constitution by federal officials or employees."). Since *Chilicky,* at least three circuits have upheld the dismissal of *Bivens* actions against IRS agents for tax assessment and collection activities. *See McMillen v. United States Dep't of Treasury,* 960 F.2d 187, 190–91 (1st Cir.1991); *Wages v. Internal Revenue Service,* 915 F.2d 1230, 1235 (9th Cir.1990), *cert. denied,* 498 U.S. 1096, 111 S.Ct. 986, 112 L.Ed.2d 1071 (1991); *National Commodity & Barter Ass'n v. Gibbs,* 886 F.2d 1240, 1248 (10th Cir.1989). *See also Baddour, Inc. v. United States,* 802 F.2d 801, 808 (5th Cir. 1986); *Cameron v. Internal Revenue Service,* 773 F.2d 126, 129 (7th Cir.1985). We agree with those decisions.

---

5. The record reveals that at one point, Vennes purchased cocaine from his own source in Florida after haggling with an undercover agent supplier about price and speed of delivery. This is not the conduct of one coerced or entrapped into crime.

Congress has provided specific and meaningful remedies for taxpayers who challenge overzealous tax assessment and collection activities. A taxpayer may challenge a jeopardy assessment both administratively and judicially, *see* 26 U.S.C. § 7429, and may sue the government for a tax refund, *see* 26 U.S.C. § 7422. Since November 10, 1988, 26 U.S.C. §§ 7432 and 7433 have authorized taxpayer actions against the United States to recover limited damages resulting from specific types of misconduct by IRS employees. These carefully crafted legislative remedies confirm that, in the politically sensitive realm of taxation, Congress's refusal to permit unrestricted damage actions by taxpayers has not been inadvertent. *See Cameron,* 773 F.2d at 129 ("it would make the collection of taxes chaotic if a taxpayer could bypass the remedies provided by Congress simply by bringing a damage action against [IRS] employees"). Thus, the district court correctly dismissed Vennes's *Bivens* claims against IRS agents for their tax assessment and collection activities.

The judgment of the district court is affirmed.

HEANEY, Senior Circuit Judge, concurring and dissenting.

Unable to affirm the district court on the only two issues presented—collateral estoppel and qualified immunity—the court today pieces together a series of rationales why Vennes should not be allowed to continue, labels them "special factors" under *Bivens,* and believes that by so doing the whole will somehow exceed the sum of its parts. There are no "special factors counselling hesitation in the absence of affirmative action by Congress" present in this case that were not present in *Bivens;* the only difference is that Bivens stated a Fourth Amendment claim and Vennes seeks to recover under substantive due process. Rather than reverse the district court and allow Vennes to proceed, as existing law compels, the majority shapes a basis for affirmance out of rationales that are already accounted for under the existing doctrines of qualified immunity and collateral estoppel or that are simply inapplicable and irrelevant. Consequently, I dissent.

If we are to believe the facts alleged and testified to by Vennes—and for purposes of this appeal we must—the defendants engaged in absolutely outrageous behavior. Vennes tells us that IRS agents posing as Chicago businessmen approached Vennes through a business acquaintance and solicited his participation in a scheme to launder money. These businessmen offered Vennes a share of the proceeds if he would launder the "dirty" money through his European connections. At the prompting of these "businessmen," Vennes made two trips to Switzerland to launder money provided to him by the agents. Vennes successfully laundered $100,000 on the first trip, but on the second trip, associates of Vennes made off with the other $100,000. (These "associates" have apparently since been prosecuted for theft.)

When Vennes returned without the money, the Chicago businessmen revealed themselves to be members of the mafia and threatened, *inter alia,* to dismember his children if he failed to recoup this money (perhaps suspecting that their superiors would be none too pleased at the loss of $100,000 of government money). These newly-revealed mobsters then suggested that Vennes engage in illegal drug and firearms transactions in an effort to recoup this money and thereby avoid serious bodily harm to him and his family. Vennes did so, the efforts to recoup the money were unsuccessful, and Vennes was eventually charged with a panoply of crimes. He was given an offer he could not refuse, which caused the district judge who accepted Vennes' guilty plea to question the government's reason for offering such a generous bargain. The government told the court that Vennes "could make a fair case" that he "was trying to recoup" the lost $100,000, that he believed he was "dealing with people from the underworld or organized crime out of Chicago," and that as a result he engaged in the drug and firearms transactions. App. at 67. "So as a result of that," the assistant U.S. attorney continued, "we felt that they were all interrelated and it's a question whether or not the defendant on his own would have entered into these [crimes] if not for the shortage of the $100,000 and that's why we thought that this would be a

just decision or just result of these as far as the acceptance of the plea." *Id.* at 67–68.

What the government did not mention at the hearing on the acceptance of the plea, but which was alluded to by the district court in this case, is the embarrassing spectacle that would be created if this case went to trial. *See Vennes v. Unknown Number of Unidentified Agents of the United States of America,* No. A1–92–84, slip op. at 1 (D.N.D. Jan. 13, 1993) (hereinafter *Vennes*) ("The court acknowledges that the underlying factual situation ... is wondrously bizarre. Especially fascinating is speculating about the scene which occurred when the undercover agents tried to explain the loss of the $100,-000.00...."). Were Vennes' *Bivens* action to go to trial, or even were discovery to proceed and any of Vennes' claims to be borne out, it is likely that the government would face significant embarrassment. The district court avoided such a possibility when it declared that Vennes is collaterally estopped by his guilty plea from pursuing this claim against the agents. *Vennes, supra,* slip op. at 2. Although this might well be a convenient way to dispose of this case, it is, as the majority notes, foreclosed by the Supreme Court's decision in *Haring v. Prosise,* 462 U.S. 306, 103 S.Ct. 2368, 76 L.Ed.2d 595 (1983). *See supra* at 1452. In that case the Court specifically noted that both the "prospect of a favorable plea agreement" and "the expectation or hope of a lesser sentence" are valid reasons why a defendant might choose not to pursue possible defenses at trial, *see Haring,* 462 U.S. at 319, 103 S.Ct. at 2376 (internal quotation marks and citation omitted), but that because an acceptance of a guilty plea involves "no adjudication whatsoever of any issues that may subsequently be the basis of a § 1983 claim," collateral estoppel is "simply inapplicable." *Id.* at 322 n. 11, 103 S.Ct. at 2377 n. 11. This holding is equally applicable to what the court correctly labels the "analog" to § 1983, the *Bivens* action.

The only other basis for affirmance offered by the defendants is qualified immunity, but it fails as certainly as does the collateral estoppel argument. Although the court chooses not to address this issue, because, it says, the district court did not address it, *see*

*supra* at 1451, the failure of this argument to carry the day can come as no surprise to the defendants. The district court, although not expressly ruling on qualified immunity, stated that "even the most zealous law enforcement agent would understand that coercion applied through threats of dismemberment of children is prohibited conduct." *Vennes, supra,* slip op. at 2. Likewise, when defendants' counsel lingered on this issue during oral argument, another member of the panel informed him in no uncertain terms that this court would "not ... affirm on qualified immunity."

The unavailability of the two argued bases for affirmance leads the court into uncharted territory. Rather than reverse the district court and remand this case for further proceedings, the court gathers together several reasons why, it believes, Vennes' case should not be allowed to proceed and then labels these reasons (none of which standing alone would suffice as a basis for affirmance) "special factors counselling hesitation" under *Bivens.* That none of these factors has ever before been considered a *Bivens* "special factor" is apparently of no consequence.

The Supreme Court has defined two situations in which a possible *Bivens* action may be defeated:

> The first is when defendants demonstrate special factors counselling hesitation in the absence of affirmative action by Congress. The second is when defendants show that Congress has provided an alternative remedy which it explicitly declared to be a substitute for recovery directly under the Constitution and viewed as equally effective.

*Carlson v. Green,* 446 U.S. 14, 18–19, 100 S.Ct. 1468, 1471, 64 L.Ed.2d 15 (1980) (internal quotation marks and citations omitted). The second exception is what prevents Vennes from proceeding with a *Bivens* action regarding the tax levy—as discussed in part III of the court's opinion, which I join—but it is the first exception that the majority purports to find applicable to Vennes' claim involving outrageous conduct.

There are few cases delineating the "special factors" mentioned in *Bivens,* and those cases that do address the issue fall neatly

into two categories. The first category includes the military cases, *United States v. Stanley*, 483 U.S. 669, 107 S.Ct. 3054, 97 L.Ed.2d 550 (1987), and *Chappell v. Wallace*, 462 U.S. 296, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1983), which hold that *Bivens* actions are not available to those who suffer injury incident to military service, and those cases in which defendants "enjoy such independent status in our constitutional scheme as to suggest that judicially created remedies against them might be inappropriate." *Carlson*, 446 U.S. at 19, 100 S.Ct. at 1472; *see Davis v. Passman*, 442 U.S. 228, 246, 99 S.Ct. 2264, 2277, 60 L.Ed.2d 846 (1979) (finding that such special factors counsel no greater protection for Congressmen than that provided by the Speech and Debate Clause). The second category involves concerns about "federal fiscal policy." *See Bivens*, 403 U.S. at 396, 91 S.Ct. at 2005; *see also FDIC v. Meyer*, —— U.S. ——, ——, 114 S.Ct. 996, 1006, 127 L.Ed.2d 308, 323 (1994) (refusing to allow *Bivens* action against federal agency, in addition to federal agents, in part because of the "potentially enormous financial burden" such claims would impose on the federal government); *Bush v. Lucas*, 462 U.S. 367, 380, 103 S.Ct. 2404, 2412, 76 L.Ed.2d 648 (1983) (finding that, similarly, questions of "federal personnel policy" are best left for Congressional action).

The "factors" put forward by the court in the instant case follow neither of these tracks. Neither of the existing lines of cases supports the court's holding—the defendants are federal law enforcement agents, not military men or Congressmen or anything else; and any financial burden imposed would fall on the agents themselves—leaving the court to invent "special factors" of its own. In all relevant respects, this cause of action against federal agents for violating Vennes' substantive due process rights is identical to Bivens' action for violation of his Fourth Amendment rights.

Furthermore, the "special factors" suggested by the court cannot begin to bear the weight of the court's holding. The first and third factors—essentially that we have never found conduct in this context sufficiently outrageous to state a substantive due process claim and that, were we to do so, it would have a chilling effect on law enforcement officers and flood the courts—are already provided for by the doctrine of qualified immunity. Taken together, they support allowing Vennes to go forward precisely because the conduct he alleges is so outrageous that it will rarely be duplicated, and, given the existing precedents on substantive due process, virtually every potential defendant will be immune from suit.

The key to this case is that the conduct alleged does go further than any of the previous cases this court has addressed. Unlike the facts in *Gunderson v. Schlueter*, 904 F.2d 407, 411 (8th Cir.1990), the defendants in this case *did* apply "extraordinary pressure on [Vennes] to convince him to join their scheme." They did not "simply ask[ ] him to commit the violations"; they threatened that if he did not they would dismember his children. The conduct alleged does "shock the conscience" and it certainly offends my "judicial notions of fairness." *Hall v. Lombardi*, 996 F.2d 954, 958 n. 4 (8th Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 698, 126 L.Ed.2d 665 (1994). Such facts are not likely to be repeated with any frequency, but to the extent that they are, plaintiffs are entitled to recover damages.

The fourth factor relied on by the court is the speculative nature of Vennes' claim for damages. The problem with the court's analysis—beyond its utter irrelevance to the question at hand—is that it assumes Vennes is only claiming damages for harm that resulted from his incarceration. *See supra* at 1453. As I read Vennes' complaint and briefs, however, he asserts damages that run independently from the two-year period prior to his guilty plea during which he was under constant threat from the defendants to continue committing crimes in an attempt to recoup the lost $100,000. Any reasonable jury could find harm to Vennes from this conduct independent of Vennes' incarceration, and any argument about the degree of the stated harms caused by his incarceration is best left for trial.

That leaves the court's second argument, suggesting that *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981),

has some bearing on the validity of Vennes' cause of action. The most that can be said about this argument is that it misunderstands certain dicta from this court's decision in *Weimer v. Amen,* 870 F.2d 1400, 1406 (8th Cir.1989). In that case, the court first dismissed Weimer's substantive due process claim on the ground that "none of our previous recognitions of substantive due process come close to the right asserted by Weimer." *Id.* at 1406. The court thought "it evident that Weimer [sought] to have Amen's conduct declared a violation of due process simply because it violated state law," which the court refused to do. *Id.* The court then went on to state, as an alternative holding, that "[i]n situations where procedural due process claims alleging property deprivation are prohibited by *Parratt,* claims based on the same actions but alleging denial of substantive due process should be barred as well." *Weimer,* 870 F.2d at 1406.

Regardless of the validity of that statement (I have found no subsequent decisions that rely on this rationale in a manner essential to judgment), it has absolutely no applicability to the facts of this case. It might be relevant to Vennes' claim involving the tax levy, but it has no relevance to his claim that he was denied substantive due process by the agents' outrageous conduct. *Parratt* could not bar a procedural due process claim in the latter case because there is no procedural due process claim to be made, and this court has previously held (prior to *Weimer*) that "*Parratt* does not bar claims based on substantive due process from being brought in federal court" because the "violation of a substantive constitutional right, including substantive due process, is complete irrespective of subsequent procedures accorded to the person whose rights have been violated." *Williams v. City of St. Louis,* 783 F.2d 114, 118 (8th Cir.1986). Furthermore, any argument that Vennes passed up what process was his due—the opportunity to present an entrapment or outrageous conduct defense at trial—is simply a rehashing of the collateral estoppel argument rejected by *Haring.*

To the extent that any "special factors" are present in this case, they counsel allowing Vennes to go forward. In *Carlson,* the court noted that one reason for allowing plaintiffs a *Bivens* action in addition to an action under the Federal Tort Claims Act (FTCA) is the deterrent effect of such an action for damages: "Because the Bivens remedy is recoverable against individuals, it is a more effective deterrent than the FTCA remedy against the United States. It is almost axiomatic that the threat of damages has a deterrent effect, surely particularly so when the individual official faces personal financial liability." 446 U.S. at 21, 100 S.Ct. at 1473 (footnote and citation omitted). Were Vennes simply to have pursued his entrapment or outrageous conduct defenses, he might well have escaped conviction (at least on the drug and firearms charges), but a successful defense in a criminal trial will have far less deterrent effect on this type of outrageous behavior than will a damages action. Any fear about inhibiting vigorous law enforcement is, as mentioned earlier, rectified by the broad availability of qualified immunity.

To sum up, the court rejects Vennes' substantive due process claim under *Bivens* because of so-called "special factors"—none of which have previously been relied on as "special factors counselling hesitation in the absence of affirmative action by Congress" to defeat a *Bivens* action, and all of which, to the extent they have any merit whatsoever, are already accounted for under the doctrines of qualified immunity and collateral estoppel. The "special factors" analysis is not intended to "concern the merits of the particular remedy that was sought. Rather, [it] relate[s] to the question of who should decide whether such a remedy should be provided." *Bush,* 462 U.S. at 380, 103 S.Ct. at 2413. On that question, Vennes' claim is indistinguishable from Bivens', and although some may disagree with the judiciary inferring causes of action directly from the Constitution, *see Bivens,* 403 U.S. at 411, 91 S.Ct. at 2012 (Burger, C.J., dissenting), that battle has long since been fought, and any concern about flooding the courts with frivolous cases, *see id.* at 430, 91 S.Ct. at 2021 (Blackmun, J., dissenting), has been similarly dealt with. *See id.* at 391 n. 4, 91 S.Ct. at 2002 n. 4.

In closing, I note one final matter about the court's decision that troubles me greatly. Only two bases appear in the record before us for affirming the summary judgment grant below and thereby thwarting Vennes' efforts to have his day in court. Neither of those two grounds for affirmance, collateral estoppel or qualified immunity, supports the district court's decision. Nonetheless, the court reaches out into the ether to shape a basis for affirmance that neither side has had an opportunity to address. Rejection of Vennes' claim that the defendants violated his substantive due process rights by posing as mobsters and threatening to dismember his children does him an injustice, but to do so on a novel legal basis, of which Vennes has had no notice, only compounds the error, and from this procedure I dissent as well.