**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

VICTOR H. TORBECK; WBI
ENTERPRISES, INCORPORATED, formerly
known as Worldwide Biologicals,
Incorporated; NASHVILLE
BIOLOGICALS, INCORPORATED,
Plaintiffs-Appellants,

No. 96-1962

v.

KATHRYN ZOON, Ph.D.; THOMAS S.
BOZZO; GARY DYKSTRA; RONALD
CHESEMORE; GERALD V. QUINNAN;
DAVID KESSLER,
Defendants-Appellees.

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Alexander Williams, Jr., District Judge.
(CA-95-1761-AW)

Argued: May 7, 1997

Decided: August 29, 1997

Before WILKINSON, Chief Judge, MICHAEL, Circuit Judge,
and COPENHAVER, United States District Judge for the
Southern District of West Virginia, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Philip Clyde Kimball, Louisville, Kentucky, for Appel-
lants. Paige Elizabeth Harrison, Associate Chief Counsel for Enforce-

ment, FOOD AND DRUG ADMINISTRATION, Rockville, Maryland, for Appellees. **ON BRIEF:** Lynne A. Battaglia, United States Attorney, Allen F. Loucks, Assistant United States Attorney, Baltimore, Maryland, for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Plaintiffs-Appellants Victor Torbeck, Nashville Biologicals, Inc. (NBI), and Worldwide Biologicals, Inc. (WBI) brought an action against six current and former employees of the United States Food and Drug Administration (FDA), seeking compensatory and punitive damages for an alleged deprivation of their rights under the Fifth Amendment's Due Process Clause. The district court determined that the plaintiffs' complaint did not allege a violation of clearly established rights and dismissed the action on the grounds of qualified immunity. We affirm.

I.

NBI and WBI are corporations which engaged in the business of collecting, storing, selling, and distributing human plasma and other blood products. Torbeck was the Chief Executive Officer of these companies as well as one of two shareholders. Defendants are all officers of the FDA, the agency in charge of regulating and licensing plasma distributors. The complaint alleges that on May 5, 1992, one of the defendants notified WBI that the WBI plasmapheresis center in Fayetteville, North Carolina, had failed to pass an inspection and would not be allowed to continue operating. Torbeck sent a letter on May 21 requesting an abeyance of the suspension, but this request was denied in a letter from defendant Kathryn Zoon, a director at the FDA. According to the complaint, Zoon said that WBI would have its

2

license permanently revoked but would have an opportunity to contest this decision at a hearing. Plaintiffs claim to have requested both a hearing and information regarding the revocation. However, the FDA did not provide any of the information requested and did not schedule a hearing. On March 22, 1993, the FDA announced an opportunity for a hearing in the <u>Federal Register</u> but did not specify a date. <u>See</u> 58 Fed. Reg. 15351-53 (1993).

On April 29, 1994, Torbeck entered into a plea agreement for three counts of violating the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 301 <u>et seq.</u>, and one count of making a false statement in violation of 18 U.S.C. § 1001. As part of the agreement, Torbeck agreed to the revocation of the WBI Fayetteville Center license.[1]

Concurrently with its investigation of WBI's Fayetteville Center, the FDA was also investigating NBI's plasmapheresis center located in Nashville, Tennessee. On September 30, 1992, the FDA suspended the Nashville Center's license to operate. Torbeck requested an abeyance of the suspension, which was denied. On October 5, 1992, Torbeck requested in a letter to the FDA that the license be revoked without a hearing.

Plaintiffs brought this action, pursuant to <u>Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics</u>, 403 U.S. 388 (1971), alleging that defendants had violated plaintiffs' constitutional rights under the Fifth Amendment's Due Process Clause by failing to provide a hearing either before or promptly after the suspension of the licenses. Defendants moved to dismiss under Fed. R. Civ. P. 12(b)(6), asserting that they had qualified immunity from the suit. The district court agreed and dismissed the action.

_____

[1] The complaint did not discuss the plea agreement; it said nothing about whether or how the WBI Fayetteville Center's license was ultimately revoked. At oral argument before the district court, however, plaintiffs acknowledged the plea agreement, and in their brief to this court they discuss the agreement in their Statement of Facts. <u>See</u> Brief for Appellants at 8.

II.

Plaintiffs claim that defendants violated their rights under the Due Process Clause by failing to provide the following: (a) a hearing prior to the suspension of the licenses, (b) a hearing promptly after the suspension of the WBI Fayetteville Center license, and (c) a hearing promptly after the suspension of the NBI Nashville Center license. We examine these claims in turn.

A.

In their complaint plaintiffs assert that defendants violated the Due Process Clause by "not provid[ing] Plaintiffs with any meaningful opportunity to be heard before shutting down the Fayetteville Center and the Nashville Center." J.A. 24. However, plaintiffs conceded before the district court that they had no right to a pre-suspension hearing. J.A. 47. Plaintiffs cannot revive that argument here. In any event, there are public health justifications for allowing FDA suspensions to take effect immediately. See, e.g., Ewing v. Mytinger & Casselberry, Inc., 339 U.S. 594, 598-600 (1950) (upholding seizures of misbranded articles under the Food, Drug & Cosmetics Act); North Am. Cold Storage Co. v. City of Chicago, 211 U.S. 306, 315-21 (1908) (upholding government authority to seize and destroy potentially infected food).

B.

Plaintiffs claim that defendants violated their right to due process by not providing a hearing within two years after the suspension of the WBI Fayetteville Center license. The license was suspended on May 5, 1992, and the FDA did not provide a hearing on that suspension within the next two years. On April 29, 1994, Torbeck voluntarily agreed to rescind the license as part of a plea agreement.

Although we generally would have concerns about the constitutionality of a two-year delay in granting a post-suspension hearing for a license to operate a business, we do not find that the district court erred in granting the defendants qualified immunity. Defendants are only liable for the violation of "clearly established statutory or consti-

4

tutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The due process right to a prompt hearing carries no hard deadlines. See, e.g., Ritter v. Cohen, 797 F.2d 119, 124 (3d Cir. 1986) ("[N]o fixed rule governs the time in which a post-termination appeal must be decided."); Kelly v. Railroad Retirement Bd., 625 F.2d 486, 490 (3d Cir. 1980) ("[T]here is no magic length of time after which due process requirements are violated."). The Supreme Court uses a three-factor balancing test for determining how long an agency can delay in affording a post-suspension hearing and decision. See, e.g., Federal Deposit Ins. Corp. v. Mallen, 486 U.S. 230, 242 (1988). We have recognized that when the inquiry into the protections afforded by a constitutional right "requires a `particularized balancing' that is subtle, difficult to apply, and not yet well defined," those protections will "only infrequently . . . be `clearly established.'" DiMeglio v. Haines, 45 F.3d 790, 806 (4th Cir. 1995) (discussing constitutional protections afforded to public employee speech).

Moreover, this case is unique in that plaintiffs did not continue to contest the validity of the FDA's suspension after the two-year delay. Instead, Torbeck voluntarily rescinded the license as part of a plea bargain on criminal charges. Plaintiffs cannot now contend that the license was improperly revoked when the license was voluntarily rescinded as part of a bargain with the government. Cf. Vennes v. An Unknown Number of Unidentified Agents, 26 F.3d 1448, 1452 (8th Cir. 1994) ("By pleading guilty, [plaintiff] elected to forego the post-deprivation process best suited to determining whether the agents in fact violated his due process rights -- the criminal trial."). In order to contest the validity of the suspension, plaintiffs needed to continue their administrative appeal until the agency reached a decision. Plaintiffs' failure to exhaust the avenues of administrative relief has waived their claim that the license was improperly revoked. Cf. Rana v. United States, 812 F.2d 887, 890 (4th Cir. 1987) ("When an argument concerns procedural rights within the purview of agency expertise, and a plaintiff fails to raise the argument before the agency, courts will entertain the argument on appeal only if it is `jurisdictional' or if there are compelling reasons for its novelty."). Plaintiffs conceded this point at oral argument.[2]

_____
[2] We are not saying that plaintiffs needed to exhaust their administrative remedies before bringing the current action, since the basis of plain-

5

With these circumstances in mind we examine the underlying merits of plaintiffs' claim. The three factors used by the Court in <u>Mallen</u> for determining the constitutionality of a delay in a post-suspension hearing are: "the importance of the private interest and the harm to this interest occasioned by the delay; the justification offered by the government for delay and its relations to the underlying governmental interest; and the likelihood that the interim decision may have been mistaken." <u>Mallen</u>, 486 U.S. at 242. As to the first <u>Mallen</u> factor, a business whose license is suspended is not seriously harmed by a delayed hearing if the validity of the suspension is not contested. We agree with the district court that, since the license was "voluntarily surrender[ed]," the delay in reaching a final determination was "harmless, at best." J.A. 51. As to the second factor, the government had an interest in pursuing the possibility of a plea bargain before it granted a hearing. A plea bargain is an opportunity to reach a mutually acceptable compromise, and it also conserves government resources. Finally, as to the third factor, we must consider the government's decision to suspend the license to be correct, since Torbeck's agreement to surrender the license waived the plaintiffs' claim to the contrary.

Thus, in looking at all the factors, we cannot conclude that the defendants violated any clearly established constitutional rights. Although we have concerns about the length of the delay in this case, we believe that the special circumstances surrounding the surrender of the license offer significant justification for that delay. <u>Cf. Mallen</u>, 486 U.S. at 242 ("For even though there is a point at which an unjustified delay in completing a post-deprivation hearing`would become a constitutional violation,' the significance of such a delay cannot be evaluated in a vacuum." (citations omitted)). Under all the circumstances here, we conclude that the defendants are entitled to qualified immunity.

_____

tiffs' claim is that there was "an unreasonable or indefinite timeframe for administrative action." <u>McCarthy v. Madigan</u>, 503 U.S. 140, 147 (1992). However, plaintiffs should not have voluntarily rescinded the license if they wished to challenge the validity of the suspension along with the constitutionality of the delay. As their action now stands, plaintiffs can challenge the delay in providing a hearing, but they cannot contend that the original suspension or eventual revocation was unjustified.

6

C.

Plaintiffs also contend that the defendants violated their right to a post-suspension hearing for the NBI Nashville Center license. The FDA suspended the license on September 30, 1992. On October 5, 1992, a mere five days later, Torbeck wrote a letter to the FDA agreeing to the revocation of the license. Plaintiffs certainly had no "clearly established" due process right to a hearing within five days of the suspension of the license. Plaintiffs claim that they were given "no other choice" but to surrender their license "[b]ecause [the FDA] had informed Victor Torbeck that NBI had no right to request an abeyance of the revocation of the subject licenses, and because Defendants had denied WBI a hearing regarding the suspension and revocation of the licenses pertaining to the Fayetteville Center." J.A. 22, 23. Even if plaintiffs feared that the hearing would be delayed, however, they were under no compulsion to voluntarily agree to the revocation of the license. The actions of defendants (essentially, accepting the surrender of the license after five days) did not violate any clearly established rights of the plaintiffs.

III.

We hold that the district court properly granted qualified immunity to the defendants against the plaintiffs' due process claims. We therefore affirm the district court's dismissal of the plaintiffs' complaint without leave to amend.

AFFIRMED

7